264 So.2d 109 (1972)
Willie Thomas INGRAM, Appellant,
v.
STATE of Florida, Appellee.
No. 71-360.
District Court of Appeal of Florida, Fourth District.
June 28, 1972.
Rehearing Denied July 31, 1972.
Walter N. Colbath, Jr., Public Defender, and Carl V.M. Coffin, Asst. Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Nelson E. Bailey, Asst. Atty. Gen., West Palm Beach, for appellee.
*110 REED, Chief Judge.
The issue before this court is whether or not the Court of Record for Broward County, Florida, committed reversible error by denying the appellant's motion to suppress a .38 caliber revolver which was offered and received in evidence against him.
The appellant was charged by information with unlawfully carrying a concealed firearm in violation of Section 790.001(2), F.S. 1969, F.S.A. The appellant filed a timely motion to suppress tangible evidence on the ground that the same was taken in violation of the Constitution of the United States and the State of Florida. After the trial of the defendant was under way, the court ruled on the motion.
It appears from the record that about 1:00 a.m. on the morning of 11 January 1971, Officers Samuel Pagano and Richard Barrett, deputy sheriffs from the Broward County Sheriff's Department, were directed to investigate an abandoned automobile found in the Carver's Ranch area of West Hollywood, Florida. At the scene, they noticed that the vehicle was stripped of the steering wheel, transmission, and drive shaft. In search of a possible witness, Officer Pagano and his partner cruised the area. Within a short distance, they came upon the defendant. He was standing on the side of the street looking into a parked automobile and talking to the sole occupant, another male, who was seated in the automobile. Officer Pagano approached the defendant on foot for the purpose of inquiring of him whether he had any knowledge of the abandoned vehicle. When Officer Pagano came within several feet of the defendant, he recognized him as Willie Ingram. The officer had previously received reports from no less than eight persons indicating that Ingram had at different times been armed with a revolver. Without further ceremony, Officer Pagano told Ingram to put his hands on the top of the car and proceeded to pat him down. The search revealed a .38 caliber revolver under the belt of Ingram covered by his shirt. The officer testified that because of the previous reports he had received, he was in fear of his life and, therefore, undertook the search. The officer testified that Ingram did nothing which made him apprehensive.
The appellant contends that the hearsay reports which led Officer Pagano to believe Ingram to be armed and dangerous did not justify the officer in stopping Ingram and searching him. Because of that, the appellant contends the search was illegal and the evidence revealed as a result thereof inadmissible. The appellant calls the court's attention to Section 901.151, F.S. 1969, F.S.A., and contends that this statute, commonly known as the Florida Stop and Frisk Law, did not authorize the temporary detention and search of Ingram.
We think that the issue in this case need not turn on the provisions of Section 901.151, F.S. 1969, F.S.A. Rather, we believe that the issue may be resolved by a resort to the underlying constitutional issue which is whether or not the search and seizure conducted by Officer Pagano violated the right of the defendant to be secure in his person as guaranteed by the Fourth Amendment to the United States Constitution and Section 12, Article I, of the Constitution of the State of Florida as amended in 1968. Each guarantees a citizen security against unreasonable searches and seizures. The central inquiry, therefore, must be directed toward the reasonableness of the search and seizure.
An analysis of the constitutional issue in a parallel fact situation was undertaken by the United States Supreme Court in the case of Terry v. State of Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In Terry the facts recited in the opinion indicate that a Cleveland police officer observed two men pacing back and forth along a city street periodically peering into a store window. It was during business hours. Further observation led the officer to detect that the two men were apparently in confederacy with a third man. The *111 men were observed to leave the store front which they had been "casing" and move to another. At this point, the officer encountered the men and asked for an explanation of their presence. When a satisfactory explanation was not forthcoming, he physically grabbed Terry, forced the trio into the store, and ultimately searched the men for weapons. Weapons were found and introduced in evidence against Terry who was tried for carrying a concealed weapon. Terry was convicted in a state court and in due course a petition for certiorari brought the case to the United States Supreme Court.
The issue before the Court was posed as follows:
"... whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for arrest." (Page 1877.)
In resolving the issue, the Court stressed that the determinative consideration under the Fourth Amendment (and, we believe, under Section 12 of Article I of the Florida Constitution) is the reasonableness under all the circumstances of the governmental invasion of the citizen's personal security. To reach the ultimate conclusion as to reasonableness, the court stated:
"... it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action was appropriate?" (Page 1880.)
The Court of course pointed out that where a protective search was justified without probable cause, the search must be limited in scope to the justification of the search. In other words, the search should not go beyond what is required to protect the officer.
By applying the principles expressed in Terry v. State of Ohio, we conclude that under the facts of the present case, the police officer had a reasonable ground under the circumstances of his encounter with the defendant to believe the defendant to be armed and dangerous and made a reasonably limited search for the purpose of neutralizing such danger. For us to hold that the officer was required to disregard the reports he had received because they were of a hearsay nature is not reasonable. Prudent people act on "hearsay" in countless matters.
Justice Harlan's concurring opinion in Terry points out what we believe is implicit in the majority opinion. That is, that before a protective search may be undertaken, the encounter between the police officer and the citizen must be justified. Justice Harlan states:
"In the first place, if the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop. Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. That right must be more than the liberty ... to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away ... I would make it perfectly clear that the right to frisk in this case depends upon the reasonableness of a forcible stop to investigate a suspected crime." (pp. 1885, 1886.)
The aspect of the present case which most troubles us is suggested by the quote from Justice Harlan's concurring opinion. On the record before us, the officer did not have probable cause to arrest the defendant. The defendant did nothing to indicate hostility of purpose. Did the officer, therefore, have a right to force an encounter with the defendant? If the facts in our case had indicated that the officer *112 sought out Ingram without probable cause for arrest and thereby voluntarily and intentionally initiated the encounter, we doubt seriously that the search and seizure would have been justified. What gives reasonableness to the forcible seizure of Ingram is the fact that the encounter was not the result of an intentional effort to confront an armed and dangerous man. Officer Pagano was pursuing a proper investigative function in the performance of the duty of his office. He did not realize that the person whom he was about to encounter was Ingram, until it was too late to safely avoid him. At this point, Officer Pagano reasonably could not have been expected to turn his back and depart. Under these circumstances, it appears to us that Officer Pagano's forcible detention and limited search of Ingram was reasonable and thus constitutionally permissible. It follows that the gun found in the search was admissible in evidence and no error committed by denying the motion to suppress.
The judgment and sentence is affirmed.
MAGER, J., concurs.
WALDEN, J., dissents, without opinion.