357 So.2d 410 (1978)
Luther Judson McNAMARA, Appellant,
v.
STATE of Florida, Appellee.
No. 51647.
Supreme Court of Florida.
March 31, 1978.
M.E. Cullom of Cullom & Cullom, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., and Richard P. Zaretsky, Asst. Atty. Gen., West Palm Beach, for appellee.
KARL, Justice.
This cause is before us on direct appeal from the judgments of the Circuit Court, in and for Seminole County. We have jurisdiction because the trial court, in denying appellant's motion to suppress evidence obtained by wiretap or intercepted wire communications, construed Article II, Section 5, Florida Constitution, thereby vesting jurisdiction in this Court. Article V, Section 3(b)(1), Florida Constitution.
*411 Although it is unnecessary to the disposition of this cause to resolve the constitutional question and, therefore, we will not do so, this does not divest us of jurisdiction to dispose of the other issues involved sub judice. P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, 116 So.2d 632 (Fla. 1959).
Appellant was informed against for carrying a concealed firearm in violation of Section 790.01, Florida Statutes (1975), and was indicted by the Statewide Grand Jury for two counts of bookmaking, which were stated in the indictment to have occurred in Seminole County, Florida. The trial court denied appellant's motion to dismiss the charge of carrying a concealed weapon, which motion alleged that appellant came within the exception contained in Section 790.25(3)(i), (m) and (n), Florida Statutes (1975), since the weapon found on appellant's person was found as a result of a search of his place of residence, and denied appellant's motion to suppress the pistol found on his person.
Appellant also filed a motion to suppress evidence taken by wiretap or intercepted wire communications and related to the bookmaking charges, and contended that the authorization for wire interception stated that the interception was in Seminole County while the applicant was a deputy sheriff of Orange County and, as such, was not one of the persons authorized to make application for the interception of wire or oral communications. The trial judge denied this motion to suppress and found that Officer Calamia, the deputy sheriff in question, could lawfully be a deputy sheriff of Seminole County, Florida, and, at the same time, be a deputy sheriff of Orange County, Florida. Reserving his right to appeal the pretrial rulings made by the trial court prior to entry of his pleas, appellant entered pleas of nolo contendere to one count of bookmaking and to carrying a concealed weapon. Initially, we find that petitioner was properly permitted to plead nolo contendere conditioned on reservation of the questions as to legality of the seizure of evidence to be used against him. This Court, in State v. Ashby, 245 So.2d 225 (Fla. 1971), held that the trial court did not err in permitting Ashby to plead nolo contendere conditioned on reservation of a question of legality of evidence seized since the question reserved was a question of law. The plea of nolo contendere waives all defects in a criminal proceeding with the exception of jurisdictional ones, and in order to reserve the right to appeal a question of law, appellant must expressly reserve the same by conditioning his plea on the reservation of the specific, narrowly-drawn question of law. Cameron v. State, 291 So.2d 222 (Fla. 4th DCA 1974), writ disch. 338 So.2d 817 (Fla. 1976).
Sub judice, appellant reserved the right to appeal the denial of his motion to suppress the pistol and his motion to dismiss the information based on the fact that the pistol was found in his place of residence. He now argues before this Court that the state failed to show probable cause to believe the appellant was armed, and he abandons his argument made in the motion to dismiss the information that he came within the exception of Section 790.25(3)(i), (m) and (n), Florida Statutes (1975).
The facts relating to the seizure of this pistol, as they appear in the hearing on the motions to suppress and to dismiss and the plea hearing, reveal that pursuant to the execution of a search warrant, not contested to be invalid, several officers, including Officers Calamia and Cook, were present in appellant's apartment in Seminole County, Florida, when he returned home on the afternoon of November 1, 1975. The search warrant described the material sought to be obtained as being kept in violation of the laws which prohibit maintaining a gambling house, unlawful wagering and bookmaking. Having heard noise outside the apartment and believing someone to be just outside the apartment door, Officer Calamia opened the door and observed appellant, wearing slacks and a shirt, in the hallway. Appellant testified that he had his hand in his pocket when the door was thrust open. Calamia ordered appellant to come into the apartment and to place his hands against *412 the wall. Calamia testified that from the rear, he could see a bulge in appellant's back pocket. He then proceeded to frisk appellant for a weapon. A four-inch, blue, R.G. 22-caliber, snubnose pistol was found in appellant's right, rear pocket. Officer Cook testified that he had information that appellant was supposed to be armed with a weapon on his person and advised Calamia to expect that appellant would be armed.
Appellant contends that the trial court erred in denying his motion to suppress the pistol seized from his person and argues that there was no probable cause to believe that he was armed. We cannot agree with appellant that the trial court erred in denying his motion to suppress. The ruling of the trial court on a motion to suppress, when it comes to the reviewing court, is clothed with the presumption of correctness, and the reviewing court will interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain the trial court's ruling. Cf. Glas v. State, 329 So.2d 341 (Fla. 3rd DCA 1976), Rodriguez v. State, 189 So.2d 656 (Fla. 3rd DCA 1966), cert. den. Suarez v. Florida, 389 U.S. 848, 88 S.Ct. 66, 19 L.Ed.2d 116. We find that under the circumstances present in the instant cause, the officers had probable cause sufficient to justify the frisking of appellant for their own safety. Cf. Wilson v. State, 324 So.2d 700 (Fla. 4th DCA 1976), Williams v. State, 294 So.2d 37 (Fla. 3rd DCA 1974), cert. den. 299 So.2d 602 (Fla. 1974), State v. Brooks, 281 So.2d 55 (Fla. 2d DCA 1973), State v. Woodard, 280 So.2d 700 (Fla. 2d DCA 1973). In determining the reasonableness of the governmental search of a citizen's person, the Supreme Court of the United States, in Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), emphasized that the facts of the search and seizure should be judged against the objective standard of whether the facts available to the police officer at the time of the seizure "warrant a man of reasonable caution in the belief" that the action was appropriate. Applying the principles enunciated in Terry v. Ohio, supra, the District Court of Appeal, in Ingram v. State, 264 So.2d 109 (Fla. 4th DCA 1972), concluded:
"By applying the principles expressed in Terry v. State of Ohio, we conclude that under the facts of the present case, the police officer had a reasonable ground under the circumstances of his encounter with the defendant to believe the defendant to be armed and dangerous and made a reasonably limited search for the purpose of neutralizing such danger. For us to hold that the officer was required to disregard the reports he had received because they were of a hearsay nature is not reasonable. Prudent people act on `hearsay' in countless matters.
.....
"What gives reasonableness to the forcible seizure of Ingram is the fact that the encounter was not the result of an intentional effort to confront an armed and dangerous man. Officer Pagano was pursuing a proper investigative function in the performance of the duty of his office... ."
The police officer in Ingram v. State, supra, while investigating an abandoned automobile, approached the defendant for the purpose of inquiring whether he had any information concerning an abandoned automobile. Upon recognizing the defendant as Ingram and having previously heard that Ingram was armed with a revolver, the officer proceeded to frisk him and found a revolver under Ingram's belt. The trial court denied the motion to suppress the revolver, and the District Court of Appeal affirmed.
The officers searching appellant's apartment pursuant to a search warrant were aware that they were searching the apartment in connection with the investigation of appellant's bookmaking activities, and they had been informed that he was armed. Since persons engaging in this type of criminal activity, i.e. bookmaking, deal with large sums of money, it is not unreasonable to assume that they are armed. When the police officer opened the door, appellant had his hand in his pocket. From the rear, a bulge in appellant's rear pocket was visible. *413 Under the totality of the circumstances, the officers were justified in frisking appellant for their own safety. Therefore, we affirm the trial court's denial of the motion to suppress the pistol.
Appellant further argues that the statewide grand jury does not have the power to indict for a gambling offense which occurs only in one county since the Statewide Grand Jury is intended as supplemental to the existing county grand jury system where certain crimes, although committed in one county, have a nexus with two or more counties; that its jurisdiction is statutorily limited to multi-county criminal activity; that the indictment charged offenses occurring in Seminole County only and showed no connection of the charged offenses with activities in a second county.
Section 905.32, Florida Statutes (1975), explains the legislative intent for the enactment of the Statewide Grand Jury act as follows:
"It is the intent of the legislature in enacting this act to strengthen the grand jury system and enhance the ability of the state to detect and eliminate organized criminal activity by improving the evidence-gathering process in matters which transpire or have significance in more than one county."
In State v. Ostergard, 343 So.2d 874 (Fla. 3rd DCA 1977), the District Court of Appeal, Third District, affirmed the trial court's dismissal of an indictment returned by the second statewide grand jury since the indictment failed to show on its face that the statewide grand jury had subject matter jurisdiction because the indictment charged that the offenses allegedly occurred in Dade County only. Therein, the District Court explicated:
"... [A]ppellees contend that the subject matter jurisdiction of statewide grand juries is not inherent, but is limited by statute. As such, appellees argue that in order for a statewide grand jury indictment to be valid, the statutory prerequisites of subject matter jurisdiction must be facially visible.
"We agree with appellees' contention. Because of the general secrecy and confidentiality which surrounds a grand jury proceeding (Section 905.24, Florida Statutes [1975]) in order for a proper evaluation of an indictment to be made by a defendant, it becomes necessary that proper jurisdictional allegations be made on the face of said indictment. Compare Pope v. State, 268 So.2d 173 (Fla. 2d DCA 1972).
"The aforementioned statutory sections quoted in the body of this opinion, along with the Petition of the Governor and Empaneling Order of the Florida Supreme Court make it clear that the jurisdiction of the Second Statewide Grand Jury was limited to multi-county offenses. We therefore hold that absent the proper jurisdictional allegations on the face of the indictments, the Second Statewide Grand Jury was without authority to properly indict appellees and dismissal was proper."
State v. Ostergard, supra, at 877. Judge Barkdull, in his specially concurring opinion, opined:
"The statewide Grand Jury, as created by the Legislature, was created solely according to the very wording of the statutes themselves to investigate multi-county crimes and nothing more. The jurisdiction of the Statewide Grand Jury is limited to certain crimes which have `* * * occurred, in two or more counties as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more counties.' Section 905.34, Fla. Stat. It has no more right to indict for a crime committed in a single county than a Grand Jury for the Eleventh Judicial Circuit in and for Dade County would have the right to indict for a crime committed in the Broward circuit. The Legislature might have given the statewide Grand Jury such power, but it did not. If a statewide Grand Jury finds evidence of a local crime it should forward its evidence to the appropriate Grand Jury for that county; *414 the same as if the Eleventh Judicial Circuit Grand Jury investigating crime in Dade County discovers evidence relating to a crime in Broward it cannot indict, but must forward the evidence to the appropriate Grand Jury of the Circuit Court in and for Broward County."
State v. Ostergard, supra, at 877.
We concur with the decision and rationale of the District Court in State v. Ostergard, supra, and with the special concurring opinion of Judge Barkdull, and we hold that absent allegations of multi-county activity on the face of the indictments, the Statewide Grand Jury was without authority to properly indict appellant.[1] To the extent that State v. Barnett, 339 So.2d 1159 (Fla. 2d DCA 1976), is inconsistent herewith, it is disapproved.
Accordingly, we find that the trial court properly denied the motion to suppress the pistol. However, since the Statewide Grand Jury was without authority to properly indict appellant, the conviction of the charge of bookmaking is reversed.
It is so ordered.
BOYD, SUNDBERG and HATCHETT, JJ., concur.
OVERTON, C.J., and ENGLAND, J., dissent.
NOTES
[1] By this decision, we do not purport to determine what activity is necessary to make the crime charged inter-county so as to fall within the jurisdiction of the statewide grand jury. We do point out, however, that the legislative intent enunciated in § 905.32, Fla. Stat. (1975), is extremely broad. This section states the purpose of the act to be "to detect and eliminate organized criminal activity by improving the evidence-gathering process in matters which transpire or have significance in more than one county." (Emphasis supplied.)