411 So.2d 1361 (1982)
Michael Anthony BENTLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 80-898.
District Court of Appeal of Florida, Fifth District.
April 7, 1982.
*1363 James B. Gibson, Public Defender, and Ronald K. Zimmet, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Edwin H. Duff, III, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Appellant pled nolo contendere with express reservation of the right to appeal (Fla.R.Crim.P. 3.172(c)(iv)) a ruling denying his motion to suppress. In addition to the search and seizure question involved in the motion to suppress, appellant on this appeal challenges the validity of a condition of probation and the legality of his split sentence.
We conclude that under the circumstances in this case, the information the arresting officer received reasonably aroused his suspicion to the extent that he acted reasonably in approaching appellant, who was loitering near a business that had previously been burglarized, for the purpose of ascertaining appellant's identity. After the officer noticed a distinctively shaped bulge in appellant's pocket, which appeared to the officer to be a weapon, the officer was warranted in conducting a limited pat down search that revealed a concealed firearm. Therefore, the trial court properly denied the motion to suppress. See § 901.151, Fla. Stat. (1979); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); McNamara v. State, 357 So.2d 410 (Fla. 1978); State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), affirmed, 387 So.2d 963 (Fla. 1980); State v. Francois, 355 So.2d 127 (Fla. 3d DCA 1978); Ingram v. State, 264 So.2d 109 (Fla. 4th DCA 1972).
Appellant also challenges the validity of a condition of probation prohibiting him from living with any female to whom he is not married or related, citing Wilkinson v. State, 388 So.2d 1322 (Fla. 5th DCA 1980), which, relying on criteria set forth in Rodriguez v. State, 378 So.2d 7 (Fla. 2d DCA 1979), held that such a condition of probation was invalid because it bore no reasonable relationship to the crime of carrying a concealed weapon.
By criminal laws, society protects the freedom, the person, and the property of each citizen from the acts of other citizens. By constitutions, these same rights of each citizen are protected from organized society, acting in the form of government. If a citizen obeys the laws, he is entitled to the utmost freedom, respect and protection possible in an organized society. However, if he chooses to disobey and disregard the rights of others, it is only just that his own rights be reduced or eliminated. At one time, justice was accomplished by permitting *1364 the injured citizen or his representative to personally take retribution upon the offender, but this is not now permitted and organized society, again acting through government, has the duty to do justice for all. This can be done only by permitting or requiring government to penalize the offending citizen by reducing his constitutional freedom from governmental action. To adequately protect the public and punish wrongdoers, it must be recognized that persons who have, by their own acts, submitted themselves to criminal sanctions do not have, and are not entitled to, all of the constitutional rights of law abiding citizens.
Criminal sanctions generally involve confinement or probation. Probation is a matter of grace. When it is offered as an alternative to confinement, it is usually considered a sufficient alternative by the sentencing judge only if the accused complies with conditions and limitations upon his usual freedoms. Oftentimes the balance of judgment between the appropriateness of confinement and the adequacy of probation is very close and the sentencing court would protect the public from the defendant by imposing the greater punishment, but for its statutory authorization and discretion to fashion specific conditions which it feels will limit and curtail the defendant's activities to an extent justifying the risk to the public involved in allowing the defendant to remain at large.[1] Since such conditions make a great difference, sentencing judges should, and do, give great care to fashioning conditions and enforcing compliance with them.
It has become a deceitful practice for a defendant to accept conditional probation from the trial court, live free until he violates a condition, and then to challenge the condition by appeal. A defendant always prefers no conditions because conditions are fetters on his right to continue the same anti-social actions and life-style that led to his violation of law and because it is the breach of those conditions which can violate probation and cause imprisonment.
When, at sentencing, the trial court proposes the conditions under which it will offer probation, the defendant should at that time seriously consider the matter and if he feels the conditions lade him with burdens too grievous to be borne, the defendant should forthrightly object to them at that time and place. It is true that an accused does not have bargaining power with the judge, but that is not the point. The defendant's legal right is to not receive a sentence of confinement in excess of the statutory maximum. If he feels the proffered probation with conditions is more onerous than the maximum confinement permitted by law, he should reject the tendered offer of probation. This is not unfair because the predicament leading to his dilemma is a matter of his own making and the trial judge is acting for organized society. It is the duty of the trial court, on behalf of the public and the defendant, to fashion such conditions of probation as, in the trial court's judgment, will serve to rehabilitate the defendant and protect and serve the public. If the trial court is adamant that the conditions are necessary, the defendant should either refuse probation or accept it as offered.
When conditions, without which the trial court would have concluded that prison was necessary, are stricken and eliminated on appeal, the trial court normally does not again have an opportunity to reweigh the alternatives in light of its inability to insist upon conditions it deemed necessary. The result is that the defendant has his cake and eats it too, that is, he has probation but without the conditions that the trial judge considered essential. At one time, appellate courts endeavored to prevent this result, see Brown v. State, 305 So.2d 309 (Fla. 4th DCA 1974), but more recently the courts have considered the constitutional rights of a probationer as if he were a law-abiding citizen and have liberally stricken conditions *1365 authorizing governmental action merely because such conditions would be unconstitutional as applied to free citizens,[2] and have even found agreements to conditions to be invalid.[3] Other cases have added further limitations upon conditions of probation by holding that such conditions must relate to the specific crime for which the offender has been convicted and must be directed to only diminishing his inclination to commit similar crimes.[4]
Probation is solely a creature of statute. Section 948.03(1), Florida Statutes (1979), expressly authorizes the sentencing court to impose nine enumerated conditions of probation in every case, many of which conditions bear no reasonable relationship to any particular crime. Thus, this statute implies that there need be no relationship between conditions of probation as such and the particular crime of which the probationer stands convicted. In addition, section 948.03(2), Florida Statutes (1979), expressly provides that the enumeration of the specific conditions shall not prevent the sentencing court from adding other conditions as it considers proper. While the crime of which an accused stands convicted is very relevant to an appropriate sentence, the particular crime which underlies the probation is not the most important consideration in devising an appropriate disposition of the case, except only as it sets the lawful limits of punishment, because the sentencing judge is dealing with and sentencing the man and not the crime. The crime is sometimes symptomatic of the malady, that is, of the inability of the defendant to live in free society without breaking its laws, but often is not.
Criminal statutes prohibit conduct considered harmful to society. Regardless of the particular crime involved, the proper purpose of all sentencing is to, within lawful limits, act on the offender in such a manner that, in the future, the offender will more likely conform his conduct to the minimal societal standards set by criminal statutes. To determine the action needed in a given case is a difficult judgment decision for the sentencing judge to make after studying the person, that person's needs and the alternatives available to the judge.
Both punishment and rehabilitation can influence future conduct. Contrary to inferences in some reported cases, both imprisonment and probation contain many aspects of punishment, through loss of various degrees of freedom, and many aspects of rehabilitation, through moral building incentives optimistically designed with the hope and goal of reforming a defendant into a more conscientious citizen with greater respect for the person and property rights of others and self-discipline enabling him to keep his resolutions. To accomplish the latter purpose is the true purpose of conditions of probation. Accordingly, the correct rule should be that section 948.03(2), Florida Statutes (1979), authorizes conditions of probation of the same general kind, class and nature[5] as does section 948.03(1), Florida Statutes, and which to the sentencing judge appear reasonable and proper to accomplish the purposes sought to be achieved. Section 948.03, Florida Statutes, does not require that the trial judge specify his reasons for imposing conditions of probation, but a cautious trial judge may see fit to do so in the event an appellate court undertakes to review for substance and reasonableness. Cf. Moore v. State, 392 So.2d 277 (Fla. 5th DCA 1980) (trial judge must state with particularity his reasons for retaining jurisdiction pursuant to section 947.16(3), Florida Statutes).
At sentencing, the trial court should clearly delineate all terms upon which he deems it necessary to condition *1366 probation and the defendant should clearly state of record his objections and refusal to accept conditions of probation, failing which he should be deemed to have accepted such conditions. In the event the trial court imposes such conditions upon a defendant over the defendant's clear objection, the defendant must appeal from the original probation order, rather than attacking the imposition of a condition after its breach. In the event conditions are subsequently held improper by an appellate court, the cause should be remanded to the trial court for reconsideration of the sentence anew in light of the trial court's inability to impose the conditions it considered proper and needed. In the matter of imposing conditions of probation, sentencing judges should, at least, have the same presumption accorded their acts as is accorded to the acts of nonjudicial public officers; that is, that public officers are presumed to have properly performed their duty in good faith.[6] This means that it should be presumed that the sentencing judge imposed the conditions of probation to protect the public and to increase the probability that the defendant will obey the law in the future. From the general presumption that a public officer performs his duty comes a secondary presumption that action taken by the officer which presupposes the existence of other matters to make such action proper, operates as presumptive proof of the existence of the necessary prerequisites. This principle should be applied to raise a rebuttable presumption that there is a rational connection between a condition of probation and the proper objective sought to be achieved by probation, which presumption the probationer should have the burden to overcome in a proceeding instituted for that purpose in the trial court. See Barlow v. State, 390 So.2d 165 (Fla. 5th DCA 1980); Barlow v. State, 388 So.2d 349 (Fla. 5th DCA 1980); Singleton v. State, 386 So.2d 1314 (Fla. 5th DCA 1980); Jones v. State, 384 So.2d 956 (Fla. 5th DCA 1980); Smith v. State, 378 So.2d 313 (Fla. 5th DCA 1980). Any appeal attacking the validity of a specific condition of probation should be from an adverse ruling in the trial court. For the above reasons, we recede from Wilkinson.
Appellant's split sentence is condemned by Villery v. The Florida Parole and Probation Commission, 396 So.2d 1107 (Fla. 1981), a decision issued after the sentencing in this case. This court has recognized the propriety of a Villery attack initiated in the appellate court,[7] so appellant's sentence is hereby reversed. Under Villery, the trial court has the authority to impose a sentence which may require a greater period of confinement than originally included within the probation order.[8] Appellant is not required to accept probation and may reject the court's attempt to effect his rehabilitation by conditions of probation rather than by a straight term of imprisonment. See Cline v. State, 399 So.2d 1115 (Fla. 5th DCA 1981).
A consideration by the full court being deemed necessary to maintain uniformity of decisions in this court on matters involved in this case, the court on its own motion determined this cause en banc. See Fla.R. App.P. 9.331(a) and (b).
Conviction AFFIRMED, sentence VACATED and cause REMANDED for sentencing.
DAUKSCH, C.J., and ORFINGER, COBB, FRANK D. UPCHURCH, SHARP and COWART, JJ., concur.
NOTES
[1] Besides reducing the risk to the public in allowing a criminal to remain at large, conditions of probation should be fashioned to serve the dual purposes of punishment of the criminal, to deter him from committing future crimes, and his rehabilitation, by forcing him into a pattern, or habit, of conduct less likely to lead him to violate the law.
[2] See, e.g., Grubbs v. State, 373 So.2d 905 (Fla. 1979).
[3] Dearth v. State, 390 So.2d 108 (Fla. 4th DCA 1980).
[4] See Almond v. State, 350 So.2d 810 (Fla. 4th DCA 1977); Coulson v. State, 342 So.2d 1042 (Fla. 4th DCA 1977); Russell v. State, 342 So.2d 96, 97 (Fla. 3d DCA 1977); Kominskey v. State, 330 So.2d 800 (Fla. 1st DCA 1976).
[5] The ejusdem generis rule.
[6] See generally 26 Fla.Jur. Public Officers § 188 (1959); 23 Fla.Jur.2d Evidence and Witness §§ 91, 93 (1980).
[7] See, e.g., Boozer v. State, 402 So.2d 585 (Fla. 5th DCA 1981); Leftwich v. State, 399 So.2d 496 (Fla. 5th DCA 1981).
[8] See Williams v. State, 405 So.2d 436 (Fla. 1st DCA 1981).