GOSHORN, Judge.
The trial court granted Derrick Wor-thington’s motion to suppress. The State appeals. We reverse.
*1314 The testimony taken at the motion to suppress hearing revealed the following scenario: Orlando police officers, Bell and Medvec, were dispatched to a scene in which a black male was reportedly “slapping around” a woman, later identified as Shandra Collins. When they arrived they observed a black male, whom Officer Bell personally knew as appellee, grab Shandra by the neck and whisper something in her ear. As the officers exited their car, appel-lee informed them that Shandra had called the police, but said that now everything was “calm”. At this point, Officer Bell observed bulges in two of the three pockets of appellee’s jacket.
Appellee was well known to Officer Bell. The Thursday prior to this incident, Bell had attempted to stop appellee in his vehicle. Appellee had fled in the vehicle, then abandoned it and escaped on foot. Further, an investigator had informed Officer Bell that appellee was suspected of shooting a person. Also, Officer Bell had recently arrested a man on a drug violation and the man told Bell that he had been abducted by appellee at gunpoint, placed in the trunk of appellee’s Cadillac and driven around Orlando as appellee attempted to persuade the man to sell drugs for him.
Based on the information he had received about appellee and the bulges he perceived in appellee’s jacket, Officer Bell expressed his belief that appellee might be armed. Officer Bell informed appellee that he was going to pat him down. The officers separated Shandra and appellee. As Officer Bell patted down appellee, he felt a hard object in one pocket and a smaller, softer object in front of it. Officer Bell stated the hard object felt like a .25 handgun. As Officer Bell started to reach for the object, appellee broke away. Officer Bell grabbed appellee’s jacket by the pocket and two bags of cocaine fell out.
The determination of the motion to suppress turns on whether Worthington’s detention was legally permissible under Florida’s “stop and frisk” law, § 901.151, Florida Statutes (1987). The Florida Supreme Court, following Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), has interpreted the stop and frisk law to permit an officer to frisk a detained person whom he reasonably believes is armed. State v. Webb, 398 So.2d 820 (Fla.1981). Likewise, a search by an officer who has information that a defendant is armed and sees a bulge in the defendant’s rear pocket is reasonable. McNamara v. State, 357 So.2d 410 (Fla.1978). See also, Bentley v. State, 411 So.2d 1361 (Fla. 5th DCA 1982), review denied, 419 So.2d 1195 (Fla.1982); Carter v. State, 370 So.2d 1181 (Fla. 4th DCA 1979), cert. denied, 378 So.2d 343 (Fla.1979); Phillips v. State, 360 So.2d 1310 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1372 (Fla.1979); Brown v. State, 358 So.2d 596, (Fla. 2d DCA 1978); State v. Francois, 355 So.2d 127 (Fla. 3d DCA 1978), cert. denied, 361 So.2d 832 (Fla.1978).
The totality of the circumstances in this case provided these law enforcement officers with a sufficient basis to stop and frisk appellee to determine if he was, in fact, armed. It was appellee’s resistance to the lawful detention and pat-down which resulted in the cocaine falling out of his jacket. Suppression of this evidence constituted error.
REVERSED and REMANDED.
DAUKSCH and DANIEL, JJ., concur.