PER CURIAM.
Ronald Morel (“Defendant”) appeals the denial of his motion to dismiss the State’s petition for civil commitment as a sexually violent predator (“SVP”) for lack of subject matter jurisdiction. Based on the Florida Supreme Court’s decisions in State v. Phillips, 119 So.3d 1233 (Fla.2013), Larimore v. State, 2 So.3d 101 (Fla.2008), and State v. Atkinson, 831 So.2d 172 (Fla.2002), the trial court did not have jurisdiction over Defendant at the time of his civil commitment. Accordingly, we reverse, and grant Defendant’s motion.
FACTS AND PROCEDURAL HISTORY[1]
While serving his sentence after being convicted in 1996 of two counts of sexual battery, Defendant filed a Rule 3.850 post-conviction relief motion to correct his sentence. The trial court found that Defendant was entitled to an evidentiary hearing on the motion. At the commencement of the hearing, the State conceded that there had to be a correction of the sentence and that it was willing to resolve Defendant’s allegations with respect to his sentencing. The parties agreed that Defendant would withdraw his Rule 3.850 motion and, instead, go forward on a motion pursuant to Rule 3.800(a), which addresses the correction of illegal sentences. As a result of the parties’ agreement, Defendant agreed to a sentence of 120 months, nunc pro tunc to the date of Defendant’s initial sentence (March 6, 1996), with the sentence further reduced by credit for prior county jail and prison time served, as well as credit for gain time previously earned. The trial court’s resentencing order was entered on April 17, 2002, and the Florida Department of Corrections (“DOC”) was requested to recalculate Defendant’s date of release. On April 18, 2002, DOC notified the court that, in light of the agreement, Defendant’s sentence expired on January 29, 2002 (approximately two and a half months prior to the hearing). Neither party disputes that the recalculated release date was January 29, 2002. Defendant was then scheduled to be released on April 18, 2002.
However, on April 18, 2002, DOC notified DCF that Defendant would be imme *1124 diately released from custody, and DCF identified Defendant as a potential “Jimmy Ryce”[2] inmate. Defendant was then placed on a 72-hour hold and involuntarily transferred to the Florida Civil Commitment Center (“FCCC”) for evaluation by a multi-disciplinary team to determine whether Defendant qualified as a SVP to be civilly committed for treatment. At the conclusion of the 72-hour hold, DCF determined that Defendant met the criteria for identification as an SVP and that he required intensive treatment before being released to rejoin the community. DCF .thus recommended prosecution under the Jimmy Ryce Act.
On April 23, 2002, the State filed a petition to have Defendant declared an SVP, requesting the lower court to commit Defendant to DCF for control, care, and treatment until Defendant is found safe to rejoin the community. The petition alleged that Defendant had previously been convicted of the crimes of sexual battery and kidnapping, and that he suffered from a mental abnormality or a personality disorder which made it likely that he would engage in acts of sexual violence if he were not involuntarily committed and confined to a secure facility for control, care, and treatment. The same date the petition was filed, the trial court found probable cause to believe that Defendant is an SVP, eligible for commitment, and that he should be placed in the custody of DCF while the State’s SVP petition was pending. Several days later and after consultation with appointed counsel, Defendant agreed in both open court and in writing to waive his right under section 394.916(1), Florida Statutes (2002), to have a commitment trial held within thirty days of the court’s probable cause determination.
On May 23, 2002, Defendant filed a Motion for Immediate Release from his civil commitment, claiming that he was not in lawful custody in April 2002, because his sentence had expired in January 2002, and, thus, the trial court lacked jurisdiction to civilly commit him. After a hearing on the motion, it was denied by the trial court.
Defendant’s trial with respect to the court’s probable cause determination was delayed for nearly ten years on account of Defendant’s “tactical” decision to “purposefully delay his trial.” Morel I, 84 So.3d at 247. During that time period, Defendant remained a noncommitted, pretrial detainee at the FCCC in the custody of DCF.
Nearly ten years after the trial court had denied his Motion for Immediate Release, on January 10, 2012, Defendant filed a Motion to Dismiss for Lack of Jurisdiction, again claiming that he was not in lawful custody at the time the civil commitment proceedings were initiated and thus no trial court had subject matter jurisdiction to hear the SVP petition. The trial court denied the motion, finding that DOC acted appropriately in processing Defendant’s release and that the 72-hour hold on Defendant was valid under the Jimmy Ryce Act.
After the trial court denied his request for reconsideration, Defendant entered into a stipulation with the State whereby he would waive his right to a trial on the April 23, 2002 SVP petition, and commit himself voluntarily to the FCCC, while specifically reserving his right to appeal the decision on his Motion to Dismiss for Lack of Jurisdiction. The trial court agreed to the parties’ stipulation and so ordered on January 11, 2012. Thus, after nearly ten years of confinement at the FCCC, Defendant was, for the first time, *1125 eligible for full exposure to the Sexual Offender Treatment Program.
Defendant, who is still under civil commitment, continues to argue in this appeal that the denial of his motion to dismiss must be reversed because no court had subject matter jurisdiction to initiate civil commitment proceedings against him where his sentence, as recalculated, had already expired and therefore he was not in “lawful custody” at the time civil commitment proceedings were initiated.
ANALYSIS
We review the issue of subject matter jurisdiction de novo. Sanchez v. Fernandez, 915 So.2d 192, 192 n. 1 (Fla. 4th DCA 2005) (“We note that the de novo standard of review used here for this issue is in conflict with the abuse of discretion standard of review used in the third and fifth districts.”).
Our decision is controlled by post-April 23, 2002 Florida Supreme Court decisions interpreting the immediate release provision, section 394.9135(1) of the Jimmy Ryce Act, and its application only to those “persons currently in custody who have been convicted of a sexually violent offense ....”§ 394.925, Fla. Stat. (2012) (emphasis added). The immediate release provision states:
If the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason, the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the Department of Children and Family Services to be held in an appropriate secure facility.
§ 394.9135(1), Fla. Stat. (2012).
Recently in State v. Phillips, the Florida Supreme Court concluded:
[S]ection 394.9135 was enacted as a safety valve for certain situations, including where a postconviction court or an appellate court rules in the defendant’s favor, thereby entitling the defendant to credit for time previously served and/or gain-time. We do not find, however, any intention on the part of the Legislature to authorize the State to first travel under section 394.9135 after an inmate’s sentence expires. To the contrary, the staff analyses explain that section 394.9135 addresses situations where a release “will become immediate” or “becomes imminent.” Thus, section 394.9135 would be utilized in situations where the award of credit and/or gain-time causes an incarcerative sentence to expire in the immediate future. ...
We hold that lawful custody under section 394.9135(1) requires the State to initiate commitment proceedings prior to the expiration of sentence date. When the anticipated release of a corrected sentence is imminent, the DOC may properly initiate the transfer of the individual to the custody of DCF prior to the expiration of the individual’s in-carcerative sentence .... Conversely, if the State first initiates commitment proceedings under section 394.9135(1) after the actual expiration of sentence date— which was accelerated due to credit for time-served and/or an award of gain-time — the individual is not in lawful custody and the circuit court is without jurisdiction to adjudicate the commitment petition.
Phillips, 119 So.3d at 1242 (emphasis added); see also Larimore, 2 So.3d at 117; Bishop v. Sheldon, 68 So.3d 259, 261 (Fla. 2d DCA 2010) (“On the merits, we conclude that Bishop may be entitled to relief under Larimore if his sentence had indeed expired before the State initiated commitment proceedings under the Act.”).
*1126 In accord with these decisions, Defendant was not in lawful custody on April 18, 2002, when the civil commitment proceedings were initiated, because his sentence as recalculated had expired on January 29, 2002 (two and a half months prior). Thus, no court in Florida had jurisdiction to allow the State to initiate civil commitment proceedings against Defendant on April 18 once the State entered into the agreement with Defendant on April 17 to reduce the sentence to 120 months, creating the situation where Defendant was then continuing to serve time on an expired sentence, not a sentence to expire in the future. See Phillips, 119 So.3d at 1242. Pursuant to Phillips, the State cannot utilize the immediate release provision of the Jimmy Ryce Act on April 18, 2002, to cover its failure to fully think through the consequences of the agreement it entered into on April 17, 2002.
Whereas the defendants in Larimore and Phillips had sentences found to be illegal because of the lower courts’ failure to appropriately factor in credit for time served, the defendant in the instant case was resentenced on his original convictions pursuant to an agreement between Defendant and the State, without an express finding by the trial court that Defendant’s original sentence was illegal (we note, however, that the record evidences that the resentencing was for the purpose of correcting an apparently illegal sentence). Nonetheless, Larimore and Phillips did not hold that a defendant’s sentence being adjudicated to be illegal was a necessary factor to the determination that the defendant was not in lawful custody when civil commitment proceedings were initiated. Notwithstanding the State’s invitation to do so, we cannot conclude that the situation in the instant case is sufficiently distinguishable from the situation in Phillips to permit us to not apply that decision’s ruling to the case at hand. Accordingly, we reverse the trial court’s denial of Defendant’s motion to dismiss the State’s civil commitment petition for lack of jurisdiction and remand for the trial court to order Defendant’s release from his current civil commitment.

Reversed and Remanded.

LEVINE, CONNER and FORST, JJ., concur.

. This discussion is based on the record developed at the trial court as well as from Morel v. Wilkins ("Morel I"), 84 So.3d 226 (Fla.2012). Prior to his waiving trial in 2012, Morel was a "noncommitted pretrial detainee” precluded by the Department of Children and Families’ (DCF) policy from the full range of the sexual offender treatment program. In Morel I, the Florida Supreme Court affirmed the trial court’s denial of Morel's petition seeking full access to the program.

. The Involuntary Civil Commitment of Sexually Violent Predators Act, sections 916.31-.49, Florida Statutes (1999), is commonly referred to as "the Jimmy Ryce Act.”