DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**ROBERT RUNCIE,**
Appellee.

No. 4D2023-1061

[October 2, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin S. Fein, Judge; L.T. Case No. 21-003634CF10A.

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey P. DeSousa, Chief Deputy Solicitor General, and Alison E. Preston, Deputy Solicitor General, Office of the Attorney General, Tallahassee, for appellant.

Michael Dutko and Jeremy J. Kroll of Dutko & Kroll, Fort Lauderdale, and Johnny McCray, Jr. of Johnny McCray, P.A., Pompano Beach, for appellee.

GERBER, J.

The state appeals from the circuit court's order dismissing, for lack of subject matter jurisdiction, a statewide grand jury's perjury indictment against a school district superintendent. The state primarily argues that the circuit court erred in granting the superintendent's motion because section 905.34, Florida Statutes (2020), empowers a statewide grand jury to indict a person for perjury which occurred "in two or more judicial circuits as part of a related transaction," and the indictment here satisfied those jurisdictional elements. We agree and therefore reverse.

We present this opinion in four parts:
1. The procedural history, based on the pleadings filed below;
2. The state's indictment, the superintendent's motion to dismiss the indictment, and the state's response;
3. The circuit court's order granting the motion to dismiss; and
4. This appeal.

# 1. *Procedural History*

In response to the mass shooting at Marjory Stoneman Douglas High School, the Governor petitioned the Florida Supreme Court to impanel a statewide grand jury. The Governor requested the statewide grand jury be impaneled to investigate, among other things, "whether school officials committed—and continue to commit—fraud and deceit by mismanaging, failing to use, and diverting funds from multi-million dollar bonds specifically solicited for school safety initiatives." *In re: Final Rep. of the 20th Statewide Grand Jury*, 343 So. 3d 584, 587-88 (Fla. 4th DCA 2022).

The Florida Supreme Court granted the petition and authorized a statewide grand jury to "'investigate crime, return indictments, make presentments, and otherwise perform all functions of [a] grand jury' related to the issues identified in the Governor's petition." *Id.* at 588 (emphasis and footnote omitted); Ord. Granting Petition for Statewide Grand Jury, In re: Statewide Grand Jury #20, No. 19-0240 (Fla. Feb. 25, 2019). The statewide grand jury was empowered with "jurisdiction throughout the State of Florida" and was to be drawn from "the Eleventh, Fifteenth, and Seventeenth Judicial Circuits." Ord., In re Statewide Grand Jury #20, No. 19-0240.

At all times relevant to the statewide grand jury's investigation, the defendant was the superintendent of the Broward County Public Schools ("the school district"). During the superintendent's tenure, the school district established a program to issue up to $800 million in general obligation bonds to fund various school projects benefitting safety, music and arts, athletics, renovations, and technology (the "SMART program").

In January 2021, the statewide grand jury indicted the school district's chief information officer ("the CIO") for alleged bid tampering. Specifically, the CIO was alleged to have unlawfully diverted SMART program funds—through the use of a sole-source contract referred to as a "piggyback contract"—to circumvent a legally-required competitive bid process.

The superintendent was scheduled to testify before the statewide grand jury on March 31 and April 1, 2021. The day before the superintendent's testimony, a witness notified Florida Department of Law Enforcement ("FDLE") agents that the superintendent had called the witness on the previous night, seeking the witness's help in understanding the school district's use of piggyback contracts. The witness claimed the following had occurred during that call. The witness explained to the superintendent why the district used piggyback contracts, how such

contracts are used correctly, and what cannot be done. The witness also explained to the superintendent why the CIO's actions were improper. The witness further gave the superintendent the names of three companies for which the school district had used piggyback contracts.

The witness also informed the FDLE agents that after receiving the superintendent's call, the witness had received a call from the school district's general counsel, who said she was helping the superintendent's attorney prepare the superintendent for his testimony to the statewide grand jury. The witness told the general counsel that the witness already had spoken to the superintendent, and then provided the general counsel with the same information which the witness had provided to the superintendent.

On April 1, 2021, the superintendent testified from the Broward County Courthouse before the statewide grand jury. Because of the COVID-19 pandemic, the statewide grand jurors had convened virtually from the respective three circuits from which each juror had been drawn.

When an assistant statewide prosecutor asked the superintendent about the contract upon which the statewide grand jury had indicted the CIO, the superintendent initially testified he "wasn't aware of the contracts or the [related] process." But when the prosecutor asked a contracting process question, the superintendent brought up piggyback contracts. When the prosecutor asked why the district used piggyback contracts, the superintendent spoke to such contracts' advantages and identified two of the three companies whose names he allegedly had obtained from the witness two days before. When the prosecutor asked when the superintendent had discussed one of the companies, the superintendent testified, "quite some time ago, maybe even longer" than three or four years. When the prosecutor asked the superintendent whether he had spoken with anyone to prepare for his testimony related to the CIO's situation or contracting issues, the superintendent testified "no."

On the evening after the superintendent's testimony had concluded, an FDLE agent confirmed again with the witness that, during the calls which the witness had received a few days earlier from the superintendent and the general counsel, the witness had provided the company names to which the superintendent had referred during his testimony. The witness then provided corroborating phone screenshots reflecting the incoming calls which the witness had received from both the superintendent and the general counsel.

3

## 2. *The State's Indictment, the Superintendent's Motion to Dismiss the Indictment, and the State's Response*

On April 16, 2021—fifteen days after the superintendent's testimony had concluded—the statewide grand jury issued a one count indictment against the superintendent for perjury in an official proceeding—that proceeding being his testimony before the statewide grand jury. The indictment pertinently alleged:

> The GRAND JURORS of the ... Statewide Grand Jury for the State of Florida ... present and charge that beginning on or about March 31, 2021[,] and continuing to on or about April 1, 2021, *in the Eleventh, Fifteenth, and Seventeenth Judicial Circuits of Florida to wit: Miami Dade, Palm Beach, and Broward Counties,* [the superintendent], while testifying under oath in an official proceeding, to wit: the ... Statewide Grand Jury ... did make a false statement which [the superintendent] did not believe to be true, in regard to a material matter, in violation of Section[] 837.02(1) of the Florida Statutes.
>
> AND *ALL SAID OFFENSES OCCURRED IN TWO OR MORE JUDICIAL CIRCUITS IN THE STATE OF FLORIDA AS PART OF A RELATED TRANSACTION* ....

(emphases added).

The superintendent filed a motion to dismiss the indictment. The superintendent primarily argued that the indictment did not satisfy section 905.34, Florida Statutes (2020)—the statute governing a statewide grand jury's jurisdiction. Section 905.34 pertinently provides:

> The jurisdiction of a statewide grand jury impaneled under this chapter shall extend throughout the state. The subject matter jurisdiction of the statewide grand jury shall be limited to [certain enumerated] offenses ... [including]: ... *perjury* ... or any attempt, solicitation, or conspiracy to commit any violation of the crimes specifically enumerated above, *when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction* or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits. The statewide grand jury may return indictments and presentments irrespective of the county or judicial circuit

4

where the offense is committed or triable. If an indictment is returned, it shall be certified and transferred for trial to the county where the offense was committed. The powers and duties of, and law applicable to, county grand juries shall apply to a statewide grand jury except when such powers, duties, and law are inconsistent with the provisions of ss. 905.31-905.40.

§ 905.34, Fla. Stat. (2020) (emphases added).

According to the superintendent's motion, his allegedly perjurious testimony, "occurred [in] and affected only Broward County, a single judicial circuit."

The state filed a response to the motion to dismiss. The state's response pertinently argued:

> The Statewide Grand Jury was given "jurisdiction throughout the State of Florida" (all twenty Circuits). Lying to that body occurred in the context of its investigative efforts "throughout the State of Florida." The Statewide Grand Jury was drawn from three separate Circuits. ... [W]hen [the superintendent] lied to the Statewide Grand Jurors, although he may have been physically located in Broward County, [the Statewide Grand Jurors] were not—the Court had convened the session virtually, and *the jurors attended from their home sites (in three Circuits) in secured fashion*.

(emphases added; internal footnote omitted).

### 3. *The Circuit Court's Order Granting the Motion to Dismiss*

After a hearing, the circuit court entered an order granting the superintendent's motion to dismiss the indictment. The order pertinently provides:

> The [superintendent] moves to dismiss the indictment ... and takes the position that the Statewide Grand Jury lacks the authority and subject matter jurisdiction to indict the [superintendent] based on alleged conduct that occurred in a single judicial circuit. The [superintendent] argues this position is supported by [section] 905.34[, Florida Statutes (2020),] as well as *McNamara v*[.] *State*, 357 So. 2d 410 (Fla. 1978). In *McNamara*[,] the Florida Supreme Court stated[:]

5

"absent allegations of multi-county activity on the face of the indictment[,] the Statewide Grand Jury was without authority to properly indict" the [d]efendant. *Id.* at 414.

...

The indictment in the present case states in pertinent part[:]

> [The superintendent] ... while testifying under oath in an official proceeding, to wit: the ... Statewide Grand Jury, did make a false statement which [the superintendent] did not believe to be true, in regard to a material matter in violation of [section] 837.02(1)[, Florida Statutes (2020),] AND ALL SAID OFFENSES OCCURRED IN TWO OR MORE JUDICIAL CIRCUITS IN THE STATE OF FLORIDA AS PART OF A RELATED TRANSACTION ....

[Section] 905.34 creates the authority and subject matter jurisdiction of the Statewide Grand Jury and expressly states "[t]he subject matter jurisdiction of the Statewide Grand Jury shall be limited" to the offenses listed in the statute "when any such offense is occurring[, or] has occurred[,] in two or more judicial circuits as part of a related transaction or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits."

*State v*[.] *Ostergard*, 343 So. 2d 874[, 877] (Fla. 3d DCA 1977) ... stated "... it [is] necessary that proper jurisdictional allegations be made on the face of [an] indictment." ... *Ostergard* ... went on to hold that "absent the proper jurisdictional allegations on the face of the indictment[]" that "dismissal was proper." *Id.* ...

This Court finds nothing on the face of the indictment in the present case that charges the [superintendent] with any crime listed in [section] 905.34[,] that occurred in two or more judicial circuits as part of a related transaction or any crime that is connected with an organized criminal conspiracy affecting two or more judicial circuits. ...

6

In *McNamara*[,] the Florida Supreme Court[, quoting Judge Barkdull's specially concurring opinion in *Ostergard*,] stated in pertinent part[:]

"The Statewide Grand Jury, as created by the Legislature, was created solely according to the very wording of the statutes themselves to investigate multi-county crimes and nothing more. ... It has no more right to indict for a crime committed in a single county than a Grand Jury for the Eleventh Judicial Circuit in and for Dade County would have the right to indict for a crime committed in ... Broward [County]. The Legislature might have given the Statewide Grand Jury such power but it did not." [357 So. 2d at 413] (emphasis added).

Pursuant to [section] 905.34[,] ... *McNamara*[,] and *Ostergard*[,] if a Statewide Grand Jury finds evidence of a local crime it must forward that evidence to the Grand Jury or State Attorney for that judicial circuit as those are the only authorities with jurisdiction to prosecute said local crime.

....

Therefore, ... it is ORDERED and ADJUDGED that the [superintendent's] ... motion to dismiss [the] indictment [for lack of subject matter jurisdiction] is GRANTED.

### 4. *This Appeal*

This appeal followed. The state primarily argues that the circuit court erred in granting the superintendent's motion to dismiss for lack of subject matter jurisdiction, because section 905.34, Florida Statutes (2020), empowers a statewide grand jury to indict a person for perjury which occurred "in two or more judicial circuits as part of a related transaction," and the indictment here satisfies those jurisdictional elements.

The superintendent pertinently responds: "[Section] 905.34[, Florida Statutes (2020),] establishes clear limitations on the subject matter jurisdiction of a statewide grand jury to offenses that are occurring, or have occurred, in two or more judicial circuits as part of a related transaction. The indictment charged [the superintendent] with perjury based upon testimony that occurred exclusively in one judicial circuit[,

7

that is, Broward County]. The [statewide] grand jury thus lacked authority to indict [the superintendent] for that offense."

Applying de novo review, we agree with the state's argument. *See Ehrlick v. State*, 898 So. 2d 237, 238 (Fla. 4th DCA 2005) ("We conduct a *de novo* review of orders on motions to dismiss when they concern a question of law."); *Morel v. State*, 138 So. 3d 1122, 1125 (Fla. 4th DCA 2014) ("We review the issue of subject matter jurisdiction *de novo*.").

As we explained in *Final Report of the 20th Statewide Grand Jury*:

> A statewide grand jury's subject matter jurisdiction is limited by statute to certain enumerated offenses, to the extent the offense at issue "is occurring, or has occurred, in two or more judicial circuits as part of a related transaction" or "is connected with an organized criminal conspiracy affecting two or more judicial circuits." § 905.34, Fla. Stat. (2018). A statewide grand jury lacks the authority to return an indictment for an offense beyond the scope of its jurisdiction. *McNamara v. State*, 357 So. 2d 410, 413–14 (Fla. 1978).

343 So. 3d at 588.

Here, we conclude the "enumerated offense" at issue—the alleged perjury—"occurred, in two or more judicial circuits as part of a related transaction." § 905.34, Fla. Stat. (2020). "Perjury" occurs when a person "makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter." § 837.02(1), Fla. Stat. (2020). In the instant case, the "official proceeding" was the statewide grand jury proceeding on March 31 and April 1, 2021. During that proceeding, while the superintendent was physically located in only the Seventeenth Circuit, he was testifying to the statewide grand jury, whose members were _located in three different circuits_—the Fifteenth, Seventeenth, and Nineteenth Circuits—during the remote proceedings. Thus, the "related transaction"—the communication of the alleged perjurious testimony to the statewide grand jurors—occurred _simultaneously in all three circuits_ when the superintendent allegedly "ma[de] a false statement, which he … [did] not believe to be true, under oath in [that] official proceeding" generally regarding whether he had spoken with anyone to prepare for his testimony related to the CIO's situation or contracting issues. As the state appropriately argues:

8

> In urging affirmance, [the superintendent] fixates on where his act of speaking falsely occurred: in Broward County. On his view, the Statewide Grand Jury could bring this charge only if he physically committed his crime in two or more circuits. But [the superintendent] ignores the nature of a perjury offense, which involves speaking falsehoods _to an audience_—and here that audience was drawn from and present in different circuits from [the superintendent] himself.

(underlining added; internal citations omitted).

The superintendent's response that, but for the COVID-19 pandemic, the statewide grand jurors all would have been physically present with him in the Broward County Courthouse, is unavailing. While this virtually-convened proceeding may have been an atypical event, the fact of the matter is the statewide grand jurors _were not_ physically present with the superintendent in the Broward County Courthouse in this instance. The statewide grand jurors had convened virtually from the respective three circuits from which each juror had been drawn, meaning that each alleged false communication from the superintendent to the statewide grand jurors occurred simultaneously in all three circuits.

The superintendent's response also is countered by the mere existence of "perjury" as one of the enumerated offenses referenced in section 905.34. The Legislature, by including "perjury" as one of the enumerated offenses referenced in section 905.34, necessarily recognized "perjury" can occur "in two or more judicial circuits as part of a related transaction," and not just in the single circuit where the speaker "makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter." §§ 905.34 & 837.02(1), Fla. Stat. (2020). The instant case presents one such factual scenario where "perjury" can occur "in two or more judicial circuits as part of a related transaction." While other factual scenarios may exist where "perjury" can occur "in two or more judicial circuits as part of a related transaction," our review is limited to the instant case's facts.

### _Conclusion_

Based on the foregoing, we reverse the circuit court's order dismissing, for lack of subject matter jurisdiction, the statewide grand jury's perjury indictment against the superintendent. We remand for the circuit court to commence further proceedings on the indictment. Nothing in this opinion should be construed as commenting on the indictment's merits.

We note the state's alternative arguments for reversal—that the superintendent's alleged phone call to the witness, who was located in Miami-Dade County, further supported section 905.34 jurisdiction, or that the statewide grand jury somehow possessed non-textual "inherent authority" to seek to punish perjury committed in the statewide grand jury's presence—lack merit without further discussion.

*Reversed and remanded with directions.*

KLINGENSMITH, C.J., and LEVINE, J., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***