661 So.2d 1268 (1995)
Dexter STUBBS, Appellant,
v.
STATE of Florida, Appellee.
No. 95-465.
District Court of Appeal of Florida, Fifth District.
October 27, 1995.
*1269 Edwin R. Ivy, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
ANTOON, Judge.
Stubbs appeals his judgment and sentence for trafficking in cocaine which were entered by the trial court after Stubbs entered a no contest plea, reserving his right to appeal the denial of his motion to suppress.[1] We affirm.
This is a bus search case and, on appeal, Stubbs presents two issues: (1) whether Stubbs voluntarily consented to the search of his luggage, and (2) whether the officers had probable cause to search a potato chip bag which was inside his luggage. We answer both questions in the affirmative.
On September 28, 1994, Officers Pigman and Randolph were working "bus interdiction" for the Orlando police department. Pigman, who had been doing this work for three years, described bus interdiction at the hearing on the motion to suppress. Pigman testified that he, along with another officer, would enter buses after the passengers had all boarded and request permission from randomly selected passengers to search their baggage for drugs and firearms. According to Pigman, most passengers would grant the officers permission to search; however, if permission were denied, the officers would move to another passenger. Pigman had been in the drug enforcement division of the police department for five years and during this time she had seen or felt cocaine incident to approximately 250 arrests.
On September 28, 1994, Pigman and Randolph boarded a bus just behind Stubbs. Stubbs proceeded toward the rear of the bus and placed his bags in an overhead bin. He then moved toward the front of the bus, passing the officers who had made contact with a passenger at the rear of the bus. After questioning the first passenger, Pigman and Randolph moved two-thirds of the way toward the front of the bus to question a second passenger. Stubbs walked past the officers and took his seat. The officers then approached Stubbs, showed him identification, and asked where he was going. Stubbs responded that he was en route from Miami to Atlanta. The officers inquired whether he had any drugs or firearms in his possession. Stubbs first responded, "Yes," but when Pigman said, "You do?", he answered, "I mean no, no, I don't." Pigman then asked if he could search Stubbs' bag and Stubbs agreed. *1270 Stubbs was not advised that he could refuse consent to search.
Stubbs removed his bag from the bin and unzipped it. When it was unzipped, a Lays potato chip bag was in plain view. Stubbs, for some reason, passed the potato chip bag to Pigman, who noticed that it was unusually heavy and that it contained several large chunks among the crunchy potato chips. Based on his experience, Pigman recognized the chunks to be cocaine cookies. Pigman also noticed that the bag had been resealed with scotch tape. He testified that he had felt cocaine cookies approximately thirty times in the past and had seen cocaine packaged in this manner two times previously. When he opened the potato chip bag, Pigman found cocaine and, as a result, he arrested Stubbs.
Stubbs challenges the trial court's findings and argues that the search was involuntary, because 1) the officers had him under surveillance; 2) the officers blocked his egress from the bus; 3) the officers failed to advise him of his right to refuse consent to search; and 4) Stubbs had limited education. In this regard, Stubbs testified that his egress from the bus was blocked by the officers, and that he was under surveillance. The court obviously resolved the conflicts in the testimony on this point offered by the officers and Stubbs in favor of the state. The trial court's ruling on a motion to suppress comes clothed with a presumption of correctness and a reviewing court must "interpret evidence with reasonable inferences and deductions in a manner most favorable to sustaining the trial court's ruling." Owen v. State, 560 So.2d 207, 211 (Fla.), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990) (citing McNamara v. State, 357 So.2d 410, 412 (Fla. 1978)).
Next, although there is no dispute that Stubbs was not advised that he had a right to refuse consent to search, the law does not require that an officer advise a bus passenger of this right, or that it be shown that the bus passenger had independent knowledge of this right in order to support a finding of voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 234, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854 (1973); Hosey v. State, 627 So.2d 1289, 1291 (Fla. 5th DCA 1993), rev. denied, 639 So.2d 978 (Fla. 1994); State v. Diaz, 549 So.2d 759, 760-61 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 232 (Fla. 1990). Accordingly, the fact that the officers did not advise Stubbs of his right to refuse consent to a search of his luggage does not render his consent involuntary.
Lastly, although Stubbs contends that his limited education precluded him from giving a knowing and voluntary consent to search, this is not borne out by the record. At the suppression hearing, Stubbs acknowledged that he has a twelfth-grade education and reads the newspaper with an overall understanding of its contents.
As for Stubb's claim that the officers lacked probable cause to search the potato chip bag, we conclude that the trial court properly ruled that Officer Pigman had probable cause to justify the search. Using his tactile perception, which was grounded in years of experience in narcotics, Pigman surmised that the bag contained cocaine cookies. "A consent to search contemplates that the searcher will employ all of his senses in conducting a search." Henderson v. State, 535 So.2d 659 (Fla. 3d DCA 1988). See Rodriguez v. State, 557 So.2d 68 (Fla. 3d DCA 1990) (the officer felt a malleable substance in the pocket of a coat located in defendant's garment bag, which, based upon tactile perception, he believed to be cocaine); Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985) (court found probable cause to search packages found in defendant's tote bag when the officer felt a malleable substance in one bag, and the bags were distinctively shaped and wrapped, causing the officer to suspect narcotics were present).
AFFIRMED.
HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] § 893.135(1)(b)(1)(b), Fla. Stat. (1993).