762 So.2d 957 (2000)
Thomas HEMINGWAY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D98-3673.
District Court of Appeal of Florida, Fourth District.
May 24, 2000.
Rehearing Denied July 17, 2000.
*958 Fred Haddad of Haddad & Hester, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
COX, CYNTHIA L., Associate Judge.
Thomas Hemingway challenges the trial court's denial of his motion to suppress evidence. The record demonstrates that appellant was seated on a northbound Greyhound bus in Fort Lauderdale when two plain-clothed law enforcement officers boarded the bus. The officers, one of whom wore a neck badge and carried a concealed weapon in his fanny pack, walked to the back of the bus and then worked forward, making sure not to block the aisles. The officers then individually identified themselves with their neck badges and picture identification and asked each passenger for permission to search carry-on items for illegal weapons, *959 narcotics, firearms, or explosives. The officers did not inform the passengers that the search was voluntary or that they did not have to cooperate.
Appellant was sitting in the next to the last seat on the window side of the bus. After two passengers seated behind appellant and the passenger seated next to him consented to the search, an officer requested appellant's permission to search his carry-on bag. Appellant was not singled out by the officer, but was questioned in order, based upon his close proximity to the back of the bus. When the officer spoke to appellant, he was standing behind appellant's shoulder while the other officer was in front of him, questioning passengers on the other side of the bus.
At an evidentiary hearing on the motion to suppress, there was conflicting evidence about whether appellant consented to being searched. Appellant claimed that he specifically did not consent to the search, but the officer who searched his bag testified that he did consent. It is undisputed, however, that appellant did not attempt to leave the bus and that no one prevented him from leaving before the search.
After searching appellant's carry-on bag, an officer discovered two large blocks of cocaine, equivalent to six pounds, inside the leg of a pair of pants, and arrested appellant. The trial court denied the motion to suppress, finding appellant's version of the events "unpersuasive." A jury convicted appellant of trafficking in cocaine of more than four hundred grams. On appeal, he raises two issues: (1) whether the court erred in denying appellant's motion to suppress (specifically, (a) whether appellant consented to the search, and if so, whether the consent was voluntary under the totality of the circumstances test; and (b) whether the search of the package within the bag was proper under the circumstances); and (2) whether the court erred in denying defense counsel's motion for mistrial.
We hold that appellant gave the officers consent to search his carry-on luggage. An appellate court should not substitute its judgment for that of a trial court on issues of fact, credibility of witnesses, and the weight to be given the evidence, if the trial court's findings are supported by competent evidence. Bush v. Ayer, 728 So.2d 799, 801 (Fla. 4th DCA 1999). After hearing all of the testimony and judging the credibility of the witnesses, the trial court found appellant's version of the events to be "unpersuasive." We will not substitute our findings for that of the trial court.
Appellant also argues that his consent was not voluntary because he felt he was not free to leave the bus, and he was not advised that the search was voluntary. Whether appellant's consent to the search of his luggage was voluntarily is governed by the United States Supreme Court's holding in Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In Bostick, the defendant argued that even though he gave them permission to search, the police illegally seized cocaine from his luggage in violation of his Fourth Amendment rights. He argued that "a reasonable bus passenger would not have felt free to leave under the circumstances of th[e] case because there is nowhere to go on a bus." Id. at 435, 111 S.Ct. 2382. The Supreme Court rejected Bostick's argument stating:
[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.... The Florida Supreme Court erred in adopting a per se rule [that every encounter on a bus is a seizure].
Id. at 439-40, 111 S.Ct. 2382. The Court clarified that the mere fact the defendant did not feel free to leave the bus because it *960 was not at his destination did not mean that police had seized him, but was the natural result of his decision to take a bus. Id. at 436, 111 S.Ct. 2382.
Although the Supreme Court in Bostick refrained from deciding whether a seizure occurred, the factors highlighted by the Court provide guidance in cases involving searches and seizures on buses. Two particular facts were emphasized in that case: (1) "the police specifically advised [the defendant] that he had the right to refuse consent;" and (2) "at no time did the officers threaten [the defendant] with a gun." Id. at 432, 111 S.Ct. 2382. The Court did not state that the police must advise passengers that they have the right to refuse consent, but noted that because the defendant was told prior to the search, it was a factor to take into consideration. Id. at 437, 111 S.Ct. 2382. The Court did, however, emphasize that officers cannot convey a message that compliance with their requests is required. Id.
There is no per se rule requiring bus passengers to be informed of their constitutional rights or that their cooperation with police is voluntary rather than mandatory. See United States v. Guapi, 144 F.3d 1393 (11th Cir.1998).[1] "[T]he law does not require that an officer advise a bus passenger of [the right to refuse consent] or that it be shown that the bus passenger had independent knowledge of this right in order to support a finding of voluntary consent." Stubbs v. State, 661 So.2d 1268, 1270 (Fla. 5th DCA 1995); see also Schneckloth v. Bustamonte, 412 U.S. 218, 249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The fact that the officers did not inform appellant of his right to refuse consent is a factor to consider,[2] but alone it does not render consent involuntary. Based upon the "totality of the circumstances," we hold that appellant's consent was voluntary and uncoerced. See Denehy v. State, 400 So.2d 1216, 1217 (Fla.1980); Elsleger v. State, 503 So.2d 1367, 1369 (Fla. 4th DCA 1987).
Next, appellant argues that the facts in United States v. Washington, 151 F.3d 1354 (11th Cir.1998), are similar to this case. We disagree. In Washington, the court held that the defendant's consent was coerced and involuntary after two officers boarded a Greyhound bus casually dressed with their weapons concealed and holding badges over their heads. Id. at 1355. One of the officers went to the rear of the bus while the other stood in the front and made the following announcement:
Good morning, ladies and gentlemen. My partner and I are both federal officers with the United States Department of Justice. No one is under arrest or anything like that, we're just conducting a routine bus check. When we get to you, if we could please see your bus ticket, some photo identification if you have some with you, please, and if you would please identify which bag[ ] is yours on the bus we'd appreciate it and we'll be out of your way just as quick as we can.
Id.
In applying Bostick, the Eleventh Circuit noted that although the officer did not threaten the defendant with a gun, he did not inform the defendant that he had the right to refuse consent. Id. at 1356-57. The court found that a reasonable person under the circumstances in that case would not have felt free to disregard the officer's requests without some positive indication that consent could be withheld. Id. at 1357. The court stated:

*961 There is no doubt in this case that the encounter began with a "show of authority," because [the officer] held his badge above his head and identified himself as a federal agent. He announced what he wanted the passengers to do, and what he was going to do. Absent some positive indication that they were not free to cooperate, it is doubtful a passenger would think he or she had the choice to ignore the police presence.
Id.
The facts in this case are clearly distinguishable. Unlike Washington, the officers here individually identified themselves, stated their purpose for being on the bus, and requested each passenger's permission to search his or her luggage. In addition, they did not request the passengers' bus tickets or identification, which alone can be intimidating. Had such a request been made, the passengers may have misconstrued the officers' reasons for boarding the bus, making them feel they were not entirely free to leave at will, even though the aisles were not blocked. Here, unlike the circumstances in Washington, the "show of authority" would not have communicated to a reasonable person that he or she was not free to decline the search or terminate the encounter. See Bostick, 501 U.S. at 439, 111 S.Ct. 2382; Washington, 151 F.3d at 1357.
We further hold that the search of the package within appellant's bag was proper under the circumstances. In Gonzales v. State, 547 So.2d 253 (Fla. 4th DCA 1989), officers found a package rolled up in the leg of a pair of pants in a defendant's bag. Id. at 253. Later tests confirmed the package contained cocaine. Id. This court found that although the defendant's actions may have given the officers consent to search the bag, it did not reach to the container in the bag unless the size, shape, and wrappings gave the officers probable cause to believe that narcotics were present. Id. at 253-54. In this case, there was specific testimony that an officer, based upon his experience and knowledge, recognized the objects as having characteristics of illegal narcotics. See also Burke v. State, 465 So.2d 1337 (Fla. 5th DCA 1985).
Lastly, appellant argues that the state's witness inappropriately commented on his right to remain silent, entitling him to a mistrial. After reviewing the record, we hold that the error was harmless beyond a reasonable doubt. See Anderson v. State, 711 So.2d 230, 232 (Fla. 4th DCA 1998)("Denial of appellant's motion for mistrial based on testimonial comment on the defendant's silence must be evaluated under the harmless error doctrine.").
In conclusion, we agree with the Washington court. "[I]f police officers genuinely want to ensure that their encounters with bus passengers remain absolutely voluntary, they can simply say so." Washington, 151 F.3d at 1357. However, based on the totality of the circumstances in this case and the rule announced in Bostick, appellant's conviction and sentence are affirmed.
WARNER, C.J., and STONE, J., concur.
NOTES
[1] However, in Guapi, the absence of a notice was an important factor based on its specific facts. Specifically, the officers' actions were carefully designed to convince the passengers that they had no choice but to accede to the officers' demands.
[2] Appellant testified at his motion to suppress hearing that he had been arrested approximately 43 times, had 18 convictions, and had spent 8.5 years in prison. Hence, it is hard to believe that he was not very familiar with the legal process and his rights.