715 So.2d 367 (1998)
Richard Joseph SNYDER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1694.
District Court of Appeal of Florida, Fifth District.
August 14, 1998.
*368 Richard S. Rhodes, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, Judge.
Richard Joseph Snyder entered a plea of no contest to the charge of grand theft,[1] reserving the right to appeal the denial of his motion to dismiss and alleging that the statewide prosecutor lacked authority to bring the charges against him.
Snyder committed four thefts between March 19, 1996 and April 3, 1996, in five different counties and four different judicial circuits. Only one of the thefts involved more than one judicial circuit; it was commenced in one judicial circuit and completed in another. In all four thefts, Snyder contacted his victims by responding to an advertisement for the sale of a particular item in the local newspaper. Snyder then fraudulently purchased the items by tendering a counterfeit cashier's check. Each check bore the same forged bank name, account name and misspelled city; all checks were prepared on the same typewriter. The statewide prosecutor aggregated the thefts and charged Snyder with one count of grand theft. See § 812.012(9)(c), Fla. Stat. (1995).
The jurisdiction of the statewide prosecutor is established in the Florida Constitution, Article IV, section 4(c), which states in pertinent part:
There is created in the office of the attorney general the position of statewide prosecutor. The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law....
Subsection 16.56(1)(a), Florida Statutes (1995), further explains:
16.56 Office of Statewide Prosecution.
(1) ... The office may:
(a) Investigate and prosecute the offenses of:
* * * * * *
(4) Any violation of the provisions of the Florida Anti-Fencing Act:
* * * * * *
(6) Any crime involving, or resulting in, fraud or deceit upon any person; or any attempt, solicitation, or conspiracy to commit any of the crimes specifically enumerated above. The office shall have *369 such power only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits.
Section 812.005, Florida Statutes (1995) provides that sections 812.012-812.037, which include grand theft, the offense with which Snyder was charged, shall be known as the Florida Anti-Fencing Act.
The statewide prosecutor claimed jurisdiction by citing to the above noted constitutional and statutory authority, and alleging that "said offense occurred in two or more judicial circuits in the State of Florida as part of a related transaction or said offense was connected with an organized criminal conspiracy affecting two or more judicial circuits in the State of Florida."
The general rule is that jurisdiction is to be determined solely from the face of the information. Zanger v. State, 548 So.2d 746, 748 (Fla. 4th DCA 1989). Snyder does not contest the sufficiency of the face of the information. See State v. Nuckolls, 677 So.2d 12 (Fla. 5th DCA 1996)(statewide prosecutor tracked the language of section 16.56(1)(a) and such language fulfilled the jurisdictional requirements for the statewide prosecutor), rev. denied, 686 So.2d 582 (Fla. 1996). Snyder instead argues that, given the facts that the parties agreed to by stipulation, the office of the statewide prosecutor lacks jurisdiction. He argues that it lacks jurisdiction because there was no "related transaction" affecting two or more judicial circuits.[2]
Snyder argues that "[w]hile the parties [stipulated] to the similarity of the four thefts in that they were accomplished by a similar method, the stipulation does not establish that the offenses constitute one `related transaction,' as where one course of conduct is a predicate for the next." For this argument, he cites Paul v. State, 385 So.2d 1371 (Fla.1980) which in turn adopted the dissent in Paul v. State, 365 So.2d 1063 (Fla. 1st DCA 1979). The dissent in Paul describes when the consolidation of "related offenses" may take place for purposes of trial under Rule 3.151 of the Florida Rules of Criminal Procedure. Specifically, a consolidation may only take place when the offenses occurred in an episodic sense. Joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are connected only by similar circumstances, does not warrant consolidation. Snyder accordingly argues that although the four thefts are similar, each is a separate episode, separated in time, and thus, cannot be considered as one "related transaction." The state simply calls our attention to the similarities among all four thefts.
The outcome of this case depends upon the definition of "a related transaction," as the term is used to in the Florida Constitution, Article IV, section 4(c), and subsection 16.56(1)(a), Florida Statutes (1995). The statewide prosecutor has jurisdiction where the offense or offenses occur "as part of a related transaction." Importantly, the information consolidated all four thefts and charged Snyder with only one count of Grand Theft in the Second Degree, in violation of subsections 812.012(9)(c) and 812.014(2)(b), Florida Statutes (1995). Subsection 812.012(9)(c) states:
Amounts of value of separate properties involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or from several persons, may be aggregated in determining the grade of the offense.
A "scheme" is defined by Black's Law Dictionary as:
A design or plan formed to accomplish some purpose; a system.... When used in a bad sense, term corresponds with "trick" or "fraud." "Scheme to defraud" within meaning of mail fraud statute is the intentional use of false or fraudulent representations for the purpose of gaining a valuable undue advantage or working some injury to something of value held by another.... Plan reasonably calculated to deceive persons of ordinary prudence and comprehension.... *370 Black's Law Dictionary 1206 (5th ed. 1979) (citations omitted). Here, Snyder used the same scheme to defraud his victims. He contacted each victim by responding to an advertisement for the sale of property in the local newspaper. He then fraudulently purchased the property by offering a counterfeit cashier's check. Each check bore the same forged bank name, account name and misspelled city, and all were forged on the same typewriter. Although the offenses lack a relationship in terms of having taken place in one episodic period, the facts do sufficiently show that Snyder conducted them pursuant to one scheme. Since consolidation of Snyder's four thefts into one grand theft count was permissible under subsection 812.012(9)(c), we conclude the office of the statewide prosecutor had jurisdiction to bring the grand theft charge against Snyder as part of a related transaction involving numerous thefts committed in two or more judicial circuits.
We affirm the judgment and sentence.
AFFIRMED.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] § 812.014(2)(b), Fla. State.(1995).
[2] It is undisputed that Snyder's offense is not "connected with an organized criminal conspiracy" affecting two or more judicial circuits. § 16.56(1)(a), Fla. Stat. (1995).