DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**ANTHONY HUNTER,**
Appellee.

No. 4D2024-2558

[April 15, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 062021CF000201A88810.

James Uthmeier, Attorney General, and Jeffrey DeSousa, Acting Solicitor General, Nathan Andrew Forrester, Chief Deputy Solicitor General, and Caleb Anthony Stephens, Solicitor General Fellow, Tallahassee, for appellant.

Bruce Alan Zimet of Bruce A. Zimet, P.A., West Palm Beach, for appellee.

CONNER, J.

The state appeals the dismissal of the Twentieth Statewide Grand Jury ("SWGJ") indictment charging the defendant with unlawful compensation or reward for official behavior. The trial court determined the crime did not occur in two or more judicial circuits and was not connected with an organized criminal conspiracy affecting two or more judicial circuits. Therefore, the trial court concluded the SWGJ did not have jurisdiction over the offense and granted the defendant's motion to dismiss. We agree with the trial court that the statute defining SWGJ jurisdiction limits the jurisdiction to crimes occurring in two or more judicial circuits or connected with an organized criminal conspiracy affecting two or more judicial circuits, and the state proffered no evidence defendant's crime met the SWGJ's jurisdictional requirements. Thus, we affirm the dismissal of the indictment and explain the reasons.

## *Background*

The defendant, as Chief Information Officer for the Broward County Public School District, was indicted by the SWGJ for unlawful compensation or reward for official behavior in violation of section 838.016(1), Florida Statutes (2021). The indictment alleged the defendant received various gifts in Georgia for himself or family members in exchange for the school district purchasing computerized smart boards from a Georgia closely-held corporation. The Georgia corporation's chief operating officer was the corporation's sole shareholder ("Allen").

The indictment alleged:

> [B]eginning on or about September 1, 2015 and continuing to on or about May 31, 2019, in the Second, Fifteenth, and Seventeenth Judicial Circuits of Florida to wit: Leon, Palm Beach, and Broward Counties, as part of an overarching scheme or course of conduct affecting two or more judicial circuits, Defendant ANTHONY HUNTER, as Chief Information Officer for Broward County Public Schools, a public servant, did knowingly and intentionally accept or agree to accept the following benefit(s) not authorized by law from [Allen and his Georgia corporation] to wit: [list of benefits in Georgia for ANTHONY HUNTER and named family member] as unlawful compensation or reward for the past, present, or future performance of an act which [ALLEN] believed to have been within the official discretion of ANTHONY HUNTER, or ANTHONY HUNTER represented as being within his official discretion, in violation of Sections 838.016(1) and 777.011 of the Florida Statutes.

In preparing a defense, the defendant filed a motion for statement of particulars seeking a more definite statement of the "act" alleged in the indictment. The trial court granted the motion for statement of particulars requiring the state to describe the "act" for which the compensation was paid. The bill of particulars described the act as "causing the Broward County School District to procure or purchase Recordex smart boards."

The defendant filed a Florida Rule of Criminal Procedure 3.190 motion to dismiss the indictment arguing the SWGJ did not have subject matter jurisdiction "since the alleged offense did not occur in two or more Florida judicial circuits." Specifically, the defendant argued that the "performance of an act" alleged in the indictment was the award of the smart board purchase to Allen's company in exchange for unlawful compensation.

2

Because the defendant was in Broward County when he awarded the purchase contract on behalf of the school district and all the unlawful compensation was delivered in Georgia, the defendant argued the offense occurred in one Florida judicial circuit, the Seventeenth Judicial Circuit. Thus, the alleged crime did not empower the SWGJ with jurisdiction. Notably, the motion was not sworn to and did not contain much discussion of the facts or identify undisputed facts as grounds for the motion.

The state's written response argued for denial of the motion, contending the SWGJ had jurisdiction because its authorizing statute, section 905.34, Florida Statutes (2021), does not require a "related transaction" to be criminal activity. The response pointed out that funds utilized to purchase smart boards came from both local municipal bonds and from state Department of Education funds. Therefore, "[b]ecause the state Department of Education is administered in Leon County and all state school funds originate in and are distributed from that County, the offense occurred in or affected the Second Judicial Circuit."

The state further argued the defendant's use of the internet facilitated part of the criminal offense by emails between the defendant and (1) a Dell Computers sales account executive in Palm Beach County (Fifteenth Judicial Circuit) to negotiate the terms of the agreement for the school district's purchase of smart boards from Allen's corporation, and (2) the operations manager of the company that stored the smart boards in a Palm Beach County warehouse until the school district was ready to receive them. Thus, the emails between the defendant, the Dell sales representative, and the warehouse representative were related transactions to accomplish the crime, establishing the offense occurred in two different Florida circuits and giving the SWGJ jurisdiction. Like the motion to dismiss, the state's written response did not identify a set of undisputed facts. However, the state's response contained more discussion of facts than the motion.

The trial court conducted a hearing on the motion to dismiss. During the hearing, the parties stipulated to the following facts[1]:

---

[1] The following list summarizes what appears to be facts agreed to by both parties based on statements of facts during various portions of arguments. Notably, the discussion regarding the facts did not occur at the hearing's start. Instead, the discussion of agreed facts occurred much later in the hearing. Although the hearing transcript contains a discussion by the attorneys that "perhaps" a written post-hearing stipulation should be filed, the appellate record does not contain a written stipulation of facts.

1.   The defendant worked as a public information officer for the Broward County School District.

2.   The defendant received as benefits: use of a house at a reduced rental rate, a house purchased for less than the supposed value, two cars purchased for less than their supposed value and employment for the defendant and his son by Allen's company. All the alleged benefits were received in Georgia.

3.   Part of the money used to purchase the smart boards was funds from the state department of education, which is located in the Second Circuit.

4.   The defendant communicated via email with a Dell sales executive at Dell Computers in the Fifteenth Circuit to set up the contract for the purchase of the smart boards.

5.   The defendant communicated via email with the storage company in the Fifteenth Circuit which housed the purchased smart boards until they were delivered to the school district.

At the hearing, the parties argued consistently with their positions in the motion and written response. The state also added a new argument that two recent opinions, *State v. Hubbard*, 392 So. 3d 1067 (Fla. 4th DCA 2024), and *State v. Miller*, 394 So. 3d 164 (Fla. 3d DCA 2024), supported its position. Both cases interpreted the words "related transaction" as used in section 16.56, Florida Statutes (2021), the Office of Statewide Prosecution ("SWP") statute, as not requiring a "related transaction" to involve criminal activity. The state argued that because both the SWGJ statute and the SWP statute use the term "related transaction," the trial court should apply the definition used for SWP jurisdiction to this case to conclude that a related transaction does not have to involve criminal activity for purposes of SWGJ jurisdiction.

The trial court entered a written order granting the motion to dismiss and explained its reasoning, which will be discussed more fully below. After the state's motion for rehearing was denied, the state gave notice of appeal.

### *Appellate Analysis*

"Where a motion to dismiss under Florida Rule of Criminal Procedure 3.190 turns on a question of law, the standard of review is de novo." *State*

*v. Sampaio*, 291 So. 3d 120, 123 (Fla. 4th DCA 2020). Issues of statutory interpretation and subject matter jurisdiction are reviewed de novo. *Id.*; *State v. Runcie*, 395 So. 3d 1070, 1075 (Fla. 4th DCA 2024); *Morel v. State*, 138 So. 3d 1122, 1125 (Fla. 4th DCA 2014).

In 1973, the Florida legislature passed the Statewide Grand Jury Act, codified today in sections 905.31-.40, Florida Statutes. Ch. 73-132, Laws of Fla. The statute governing the jurisdiction of the SWGJ is section 905.34, which provides:

> The jurisdiction of a statewide grand jury impaneled under this chapter shall extend throughout the state. The subject matter jurisdiction of the statewide grand jury shall be limited to the offenses of:
>
> (1) Bribery, burglary, carjacking, home-invasion robbery, criminal usury, extortion, gambling, kidnapping, larceny, murder, prostitution, perjury, and robbery; . . .
>
> [twelve more subsections listing crimes]
>
> or any attempt, solicitation, or conspiracy to commit any violation of the crimes specifically enumerated above, when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits. The statewide grand jury may return indictments and presentments irrespective of the county or judicial circuit where the offense is committed or triable. If an indictment is returned, it shall be certified and transferred for trial to the county where the offense was committed. The powers and duties of, and law applicable to, county grand juries shall apply to a statewide grand jury except when such powers, duties, and law are inconsistent with the provisions of ss. 905.31-905.40.

§ 905.34, Fla. Stat. (2021) (emphasis added). The jurisdictional language most debated in this appeal is the provision that SWGJ jurisdiction exists "when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction or when any such offense

5

is connected with an organized criminal conspiracy affecting two or more judicial circuits." § 905.34, Fla. Stat. (2021).[2]

The SWGJ's subject matter jurisdiction must be demonstrated on the indictment's face. *McNamara v. State*, 357 So. 2d 410, 413 (Fla. 1978) ("[A]bsent the proper jurisdictional allegations on the face of the indictments, the [Second SWGJ] was without authority to properly indict[.]" (quoting *State v. Ostergard*, 343 So. 2d 874, 877 (Fla. 3d DCA 1977))).

The indictment charges the defendant with the crime of unlawful compensation or reward for official behavior, citing section 838.016(1). Section 838.016(1) defines the crime as follows:

> It is unlawful for any person to knowingly and intentionally give, offer, or promise to any public servant, or, if a public servant, to knowingly and intentionally request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.

§ 838.016(1), Fla. Stat. (2021). The elements of the crime alleged in the indictment are:

> (1) the defendant is a public servant;
>
> (2) the defendant, as part of an overarching scheme or course of conduct affecting two or more judicial circuits, did knowingly and intentionally accept or agree to accept benefits not authorized by law;

---

[2] Both parties have argued in this appeal whether the indictment in this case charged an enumerated offense giving the SWGJ jurisdiction. We decline to address that issue because the issue was not (1) framed in the motion to dismiss or the state's written response; (2) argued during the motion to dismiss hearing; or (3) addressed in the trial court's order. Also, the defendant's appellate arguments that the crime of unlawful compensation or reward to a public official is not an enumerated offense for SWGJ jurisdiction is surprising because, at the motion to dismiss hearing, the defendant conceded the indictment alleged an enumerated offense.

(3) the benefits were unlawful compensation for the past, present, or future performance of an act; and

(4) the unlawful compensation was for "performance of an act" which Allen believed was within the defendant's official discretion or was represented by the defendant as being within his official discretion.

As stated above, the indictment alleged that the unlawful compensation was for "performance of an act." The trial court granted the defendant's motion for statement of particulars requiring the state to describe the "act" for which the compensation was paid. The bill of particulars described the act as "causing the Broward County School District to procure or purchase Recordex smart boards."

The state frames its arguments for reversal around two topics: the SWGJ had jurisdiction to issue the indictment in this case because the offense (1) occurred in two or more judicial circuits involving related transactions; and (2) was an organized criminal conspiracy affecting two or more judicial circuits. The state focuses most of its arguments on the first topic. We proceed to explain our analysis as to both topics.

*Whether the Offense Occurred in Two or More Judicial Circuits*

*The State's Appellate Arguments*

The state argues the indictment alleges a "scheme to defraud the public" which involved "channel[ing] 'state Department of Education funds' that 'originated in and [were] distributed from' the Second Circuit." The state also argues the scheme led the defendant to negotiate a contract with a Dell representative in Palm Beach County, to bring Allen's company into the scheme as the actual supplier of smart boards. To facilitate the purchase, the defendant also negotiated a place for the smart boards to be stored until the school district was ready to use them. For storage, the defendant negotiated with a warehouse in Palm Beach County. Thus, the state contends the negotiations involving funding, purchasing, and storing the smart boards were "related transactions" to accomplish the crime. Because those "related transactions" involved two Florida circuits other than the Seventeenth Circuit, the state argues the offense qualified for SWGJ jurisdiction.

Notably, the state repeatedly refers to the defendant's "scheme" as a bribery offense, rather than focusing on section 838.016 on which the indictment was based. Significantly, the words "scheme to defraud" do

not appear in section 838.016. Nonetheless, the indictment, apparently drafted by the SWP, alleges the defendant received unlawful compensation by pursuing "an overarching scheme or course of conduct affecting two or more judicial circuits." Presumably, the indictment employed "scheme" language in anticipation that SWGJ jurisdiction would be contested. The use of the term "scheme" facilitates a broad interpretation of the term "related transactions."

On appeal, the state advances textualist and grammatical arguments for the meaning of "related transactions" to support its contention that the defendant's crime occurred in more than one Florida circuit. The state argues the phrases "in two or more judicial circuits" and "as part of a related transaction" in the SWGJ jurisdiction statute are not separate modifiers of the preceding verb "occur" because no conjunction appears between the two phrases. In the state's view, "in two or more judicial circuits" explains more about where the offense must occur, while "as part of a related transaction" modifies the prior phrase by calibrating the degree of modification.

The initial brief relies on dictionary definitions of "related" and "transaction." The state asserts that "related" means "connected" or "associated," and "transaction" means "an act, process, or instance of transacting" or "a communicative action or activity involving two parties or things that reciprocally affect or influence each other." The state argues the plain meaning of "related transaction" does not connote criminal activity, and it is quite common that noncriminal activity can be related to criminal activity.

The state further argues that the term "related transaction" used in the SWGJ jurisdiction statute means the same thing as "related transaction" in the SWP jurisdiction statute. In support of that argument in the trial court, the state's written response to the motion to dismiss and arguments at the hearing cited five cases discussing the term "related transaction" in the context of asserted single circuit crimes.[3] On appeal, the state cites two of the five cases, but as discussed below, the state does not address the trial court's conclusion that the five cases are distinguishable because the related transactions in those cases involved criminal acts occurring in more than one circuit.

---

[3] The five cases are: *King v. State*, 790 So. 2d 477 (Fla. 5th DCA 2001); *State v. Tacher*, 84 So. 3d 1131 (Fla. 3d DCA 2012); *Thomas v. State*, 125 So. 3d 874 (Fla. 4th DCA 2013); *Scott v. State*, 102 So. 3d 676 (Fla. 5th DCA 2012); and *Snyder v. State*, 715 So. 2d 367 (Fla. 5th DCA 1998).

8

The state also argues this case is much like *Runcie*. There, Runcie, the school district's superintendent, was properly indicted for testifying falsely when the Twentieth SWGJ convened remotely with jury members spread across three circuits, such that "each alleged false communication from the superintendent to the statewide grand jurors occurred simultaneously in all three circuits." 395 So. 3d at 1076. The state argues "[i]f the [SWGJ] had jurisdiction there [referring to *Runcie*], it surely does here."

After discussing *Runcie,* the state argues that Florida law treats crimes facilitated by remote communication services as crimes committed in multiple places, including multiple counties, citing section 910.15(1), Florida Statutes (2021), the venue statute for crimes facilitated by communications systems. However, the state does not discuss or cite any case interpreting section 910.15(1) as applying to SWGJ or SWP jurisdiction other than *Runcie,* which did not discuss section 910.15(1).

*The Defendant's Appellate Arguments*

The defendant argues that *Runcie* supports affirmance because in *Runcie,* we rejected the state's argument that a telephone call between Runcie and a witness located in another county gave the SWGJ jurisdiction over a multi-county crime. 395 So. 3d at 1077.

The defendant urges us to reject the state's attempt to commingle language and context of the SWP statute with the SWGJ statute. The defendant admits that certain terms are used in both statutes, but the SWGJ statute explicitly states that SWGJ jurisdiction is "limited," while the SWP statute contains no reference to limitation of scope of jurisdiction. *See* § 905.34, Fla. Stat. (2021) ("The subject matter jurisdiction of the statewide grand jury shall be limited to the offenses of: . . . ."). The defendant argues the SWP statute has repeatedly been expanded by adding new offenses the SWP has jurisdiction to investigate, including offenses "facilitated by or connected to the use of the Internet." § 16.56(1)(b), Fla. Stat. (2021).

Lastly, the defendant argues that caselaw discussing statutory interpretation of SWP jurisdiction over voting offenses to elect government officials has no precedential value for this case because the SWP jurisdiction statute is much broader than the SWGJ jurisdiction statute.

*The Trial Court's Analysis*

The trial court's dismissal order stated that "the plain meaning of the statute's text [referring to section 905.34] indicates that an offense or

9

offenses must have occurred in two or more judicial circuits." Construing the statutory language as unambiguous, the trial court concluded:

> The word "offense" inherently involves criminal activity. The [SWGJ jurisdiction] statute does not authorize [SWGJ] jurisdiction for multi-county activities that are not criminal in nature and that took place before or after the commission of the enumerated offense.

The trial court then identified the statutory elements of the unlawful compensation offense as applied to the defendant: (1) the defendant's employment as public servant; (2) the knowing request, solicitation, acceptance, or agreement to accept pecuniary or other benefit not authorized by law; (3) for the award of the smart board contract; and (4) the defendant's representation or Allen's belief that the award of the smart board contract was within the defendant's official discretion. The trial court then stated that none of the elements occurred in any Florida judicial circuit other than the Seventeenth Circuit because the Seventeenth Circuit is where the defendant's agreement to accept unlawful compensation and representation of official discretion had occurred. Notably, the trial court's elements analysis of the offense alleged in the indictment did not discuss "the act," as that term was used in the indictment. That is probably because none of the parties' arguments at the hearing dissected "the act" as used in the indictment and clarified in the statement of particulars.

The trial court's dismissal order addressed the state's argument that the five cited cases interpreting the "related transaction" term in the SWP jurisdiction statute should be applied to the SWGJ jurisdiction statute. The trial court concluded the five cases were distinguishable because, in those cases, the related transactions were criminal activities which occurred in more than one circuit.

As to the state's internet usage argument, the trial court reasoned that the SWP statute specifically references internet usage as grounds for SWP jurisdiction, but the SWGJ jurisdiction statute does not. The trial court's order reasoned that if the legislature uses language in one place but not another, courts are not allowed to add words to a statute. The dismissal order quoted *Villanueva v. State*, 200 So. 3d 47, 52 (Fla. 2016), for the proposition that "a matter that is not covered by a statute is to be treated as intentionally not covered," and *Overstreet v. State*, 629 So. 2d 125, 126 (Fla. 1993), for the proposition that "[i]f the legislature did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute." Thus, the trial court rejected the state's argument that because section 910.15(1) extends SWP prosecution

jurisdiction, section 910.15(1) also extends SWGJ jurisdiction to a section 838.016(1) violation.

*Our Analysis*

We begin by observing that section 905.32 states the legislative intent of Florida's Statewide Grand Jury Act is "to strengthen the grand jury system and <u>enhance the ability of the state to detect and eliminate organized criminal activity</u> . . . <u>in matters which transpire or have significance in more than one county</u>."  § 905.32, Fla. Stat. (2021) (emphasis added).  Thus, the focus of the Statewide Grand Jury Act is <u>organized criminal activity</u> which transpires or has significance in more than one county.

Critically significant is that section 905.34 limits SWGJ jurisdiction to enumerated offenses which occur "in two or more judicial circuits as part of a related transaction" or when an enumerated offense "is connected with an organized criminal conspiracy affecting two or more judicial circuits." § 905.34, Fla. Stat. (2021).

The problem with the state's textualist and plain language analysis is that it does not squarely address whether the term "related transaction" connotes criminal activity.  Likewise, the state's reliance on dictionary definitions of "related" and "transaction" ignores the requirement of statutory interpretation that words in a statute must be examined together and in the context of all language in the statute.  *See R.N. v. State*, 257 So. 3d 507, 510 (Fla. 4th DCA 2018) ("We must consider the words in the statute in context and after considering the entire statute.").  The SWGJ jurisdiction statute was enacted to facilitate prosecuting <u>crimes</u> occurring in two or more judicial circuits if those <u>crimes</u> are related transactions or the result of an organized <u>criminal</u> conspiracy.  Given the stated legislative purpose in section 905.32, that the SWGJ act is to "detect and eliminate organized criminal activity," clearly the intent of section 905.34 is to facilitate the prosecution of the <u>criminal activities of organized enterprises</u>. *Compare* § 905.32, Fla. Stat. (2021), *with* § 905.34, Fla. Stat. (2021).

The trial court carefully considered the five cases on which the state relied in support of its argument that a "related transaction" does not have to be criminal activity.  The trial court determined the cases did not support the argument that funding and negotiations with the Dell representative and warehouse representative were related transactions sufficient to extend SWGJ jurisdiction to the charged offense.  The trial court concluded the five cases did not support the state's argument because, in each of the five cited cases, the related transaction was itself

a crime. Having reviewed the five cited cases, we agree with the trial court's analysis.

We disagree with the state's argument that *Runcie* supports reversal in this case. *Runcie* is inapplicable to this case because there, we decided the offense simultaneously occurred in three different circuits. 395 So. 3d at 1076. Here, the state does not contend that the defendant's criminal act of "causing the Broward County School District to procure or purchase Recordex smart boards" simultaneously occurred in more than one circuit. Additionally, in *Runcie*, we rejected the state's contention that phone calls established SWGJ jurisdiction. *Id.* at 1077. In terms of SWGJ jurisdiction as to where an enumerated offense occurs, we see no distinction between phone calls and emails.

We also agree with the trial court's analysis that some words in both the SWGJ jurisdiction statute and the SWP jurisdiction statute are the same. Also true is that the legislature has inserted words in the SWP statute that are not in the SWGJ statute. And amendments to both statutes have not added words in the SWGJ statute that have been added to the SWP statute. Thus, we agree with the defendant and the trial court that SWP jurisdiction is broader than SWGJ jurisdiction. *See Villanueva*, 200 So. 3d at 52 ("[W]e are not at liberty to add to a statute words that the Legislature itself has not used in drafting that statute." (citing *Lawnwood Med. Ctr., Inc. v. Seeger*, 990 So. 2d 503, 512 (Fla. 2008))).

Finally, we agree with the trial court's conclusion stating, "[t]he word 'offense' inherently involves criminal activity. The [SWGJ jurisdiction] statute does not authorize [SWGJ] jurisdiction for multi-county activities that are not criminal in nature and that took place before or after the commission of the enumerated offense."

For the above reasons, we affirm the trial court's dismissal of the indictment because the alleged offense did not occur in two or more judicial circuits.

*Whether the Offense Was Connected with an*
*Organized Criminal Conspiracy Affecting Two or More Judicial Circuits*

The state next argues the bribery scheme was plainly connected with an organized criminal conspiracy between the defendant and Allen. In other words, the state contends the defendant's agreement with Allen to accept unlawful benefits for the smart board contract award to Allen's company was all that was needed for SWGJ jurisdiction because the

agreement itself was a conspiracy resulting in an offense affecting more than one circuit.

The state cites *Czajkowski v. State*, 178 So. 3d 498 (Fla. 4th DCA 2015), in support of its organized criminal conspiracy argument. Czajkowski, like the defendant in this case, was charged with unlawful compensation for official behavior under section 838.016(1). However, unlike this case, Czajkowski was also charged with conspiracy to commit unlawful compensation for official behavior. *Id.* at 499. Further, Czajkowski's argument on appeal was that section 838.016(1) was unconstitutional, an issue that has no bearing on the instant appeal. *Id.* Therefore, *Czajkowski* does not support reversal.

Travelling on his arguments on the first issue, the defendant responds that the state failed to offer any proof his offense was connected with criminal activity in two or more circuits, therefore any conspiracy about the defendant's and Allen's activities could not establish an "organized criminal conspiracy affecting two or more circuits."

Because the trial court concluded that transfer of state funds from Leon County to Broward County and the defendant's negotiations with the Dell and warehouse representatives in Palm Beach County were not elements of the charged offense, those facts also failed to support the existence of organized criminal activity affecting a circuit other than the Seventeenth Circuit.

We agree with the trial court's ruling and affirm on this second issue.

### *Conclusion*

Having determined that the trial court correctly dismissed the indictment charging the defendant with unlawful compensation or reward to a public official, we affirm.

*Affirmed.*

MAY and CIKLIN, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely-filed motion for rehearing.**

13